McAULEY, RESPONDENT, v. CASUALTY COMPANY OF AMERICA, APPELLANT.

(No. 2,650.)

(Submitted May 4, 1909.. Decided June 1, 1909.)

[102 Pac. 586.]

*Life and Accident Insurance Policies—Construction—Proximate Cause of Death—Evidence—Street-cars—Passenger— Proof of Death — Mailing — Presumptions — Pleadings— Amendments—Hypothetical Questions.*

Life and Accident Insurance Policies—Ambiguity—Construction.
  1.  Where the terms of a life and accident insurance · policy are so ambiguous and involved as to be almost unintelligible, they should be liberally construed in favor of the insured.

Same—Law of the Case—Estoppel.
  1a.  Where at the first trial of a cause counsel for both parties proceeded upon a certain theory touching the meaning of the terms of an insurance policy, and on appeal the question of its proper construction was not raised in or considered by the appellate court, its decision cannot be said to be the law of the case on such point, and plaintiff was, therefore, not estopped to contend for a different construction on the second trial.

Same—Proximate Cause of Death—Evidence—Sufficiency.
  2.  In an action on a life and accident insurance policy under the terms of which the beneficiary was to be indemnified in case the assured, while riding as a passenger on a street-car, was injured and should die in consequence of such injury, evidence which showed that the assured injured her leg while alighting from a car and died from erysipelas, which disease experts testified could only be introduced into the system through an abrasion of the skin, was in the absence of any testimony that the disease had been communicated through any other means, sufficient to show that the injury to her limb was the proximate cause of her death.

Same—Passengers—Evidence—Sufficiency.
  3.  Although there was no direct testimony that the deceased was a passenger on the car in alighting from which she was injured, evidence that it stopped at her home and she alighted, sufficiently showed that fact, nothing appearing that it stopped for any other purpose.

Same—Proof of Death—Mailing—Presumptions.
   4.   Where proof of death was mailed to the home office of defendant
   insurance company at New York by registered letter, the presumption
   obtains that it was received in due course of mail.

Same—Pleadings—Amendment at Trial.
   5.   Plaintiff, in an action on an insurance policy, was properly allowed
   to amend his complaint at the trial by the allegation that "he had
   duly performed each and all of the obligations in said contract on him
   binding."

Same—Pleadings—Amendments at Trial—Relation Back.
   6.   An insurance policy provided that unless action upon it was com-
   menced within six months after it accrued, it should be barred.   As-
   sured died October 24, 1906, and the beneficiary commenced suit on
   April 24, 1907.   At the trial, on October 23, 1907, he was permitted
   to amend his·complaint by inserting that he had duly performed all
   obligations made binding upon him in the contract.   *Held*, under *Clark*
   v. *Oregon Short Line R. R. Co.*, 38 Mont. 177, that the original pleading
   was sufficiently substantial to permit of its being amended so as to
   fully state the same cause of action attempted to be stated in the first
   instance; that the amendment related back to the date at which the
   complaint was filed, and that therefore the contention that the action
   was barred because the complaint never stated a cause of action until
   after amendment, had no merit.

Same—Evidence—Hearsay—Harmless Error.
   7.   Plaintiff, the husband of deceased, having testified that he saw
   she was injured in alighting from the car, the admission of a state-
   ment by her, made to him at the time, that she had been hurt, was not
   prejudicial error.

Same—Hypothetical Questions—Contents.
   8.   A hypothetical question to an expert need not embody all the tes-
   timony on the subject to which it relates.

Same—Expert Evidence—Hypothetical Question.
   9.   The hypothetical question: "If the woman died from erysipelas,
   what relation, in your opinion, as a physician and surgeon, did the
   scratch or abrasion have to her death?" to which the answer was: "It
   served as a point of entrance into the system of the germ of ery-
   sipelas"—was not objectionable as calling for the ultimate conclusion
   to be reached by the jury, to-wit, whether the injury which produced
   the abrasion, was the direct and proximate cause of the woman's death.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

Action by John McAuley against the Casualty Company of America.   Judgment for plaintiff.   Defendant appeals.   Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellant.

"The construction placed upon a written contract by the appellate court on a former appeal is the law of the case and de-

cisive of the question on a subsequent trial." (*Adams* v. *Thornton*, 5 Cal. App. 455, 90 Pac. 713; *Hiatt* v. *Brooks*, 17 Neb. 33, 22 N. W. 73; *Kane* v. *Rippey*, 22 Or. 299, 29 Pac. 1005; *Palmer* v. *Murray*, 8 Mont. 174, 19 Pac. 553; *O'Rourke* v. *Schultz*, 23 Mont. 285, 58 Pac. 712.)

Plaintiff had the burden of proving that deceased was hurt while being a passenger on the street-car, and that if erysipelas resulted from the scratch it must have been introduced into her system by some means for which defendant was responsible. (See *National Masonic Accident Assn.* v. *Shryock*, 73 Fed. 774, 20 C. C. A. 3; *Barry* v. *United States Mut. Assn.*, 23 Fed. 712; *Western Com. T. Assn.* v. *Smith*, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Bacon* v. *United States M. A. Assn.*, 123 N. Y. 304, 20 Am. St. Rep. 748, 25 N. E. 399, 9 L. R. A. 617; *Continental Casualty Co.* v. *Peltier*, 104 Va. 222, 51 S. E. 209.)

The amendment to the original complaint was erroneously allowed. At all times prior to the amendment the complaint stated no cause of action. At the trial a new material issue was for the first time raised under the amendment. This cannot be done. (*Wormall* v. *Reins*, 1 Mont. 627.) The period of six months, provided by the policy of insurance, wherein this action must be commenced, had long since expired when the amendment was allowed, and such allowance thereby deprived the defendant of the benefit, which the lapse of time had given it. (*Smith* v. *Smith*, 45 Pa. 403; *Trego* v. *Lewis*, 58 Pa. 463; *Tyrrill* v. *Lamb*, 96 Pa. 464; *Miller* v. *Bealer*, 100 Pa. 583; *City of Philadelphia* v. *Hestonville, M. & F. Pass. R. Co.*, 203 Pa. 38, 52 Atl. 184; see, also, *Doyle* v. *City of Sycamore*, 193 Ill. 501, 61 N. E. 1117; *Missouri M. K. & T. Ry. Co.* v. *Bagley*, 65 Kan. 188, 69 Pac. 189, 3 L. R. A., n. s., 259; *Blake* v. *Minkner*, 136 Ind. 418, 36 N. E. 246, 248; *Lilly* v. *Charlotte C. & A. R. Co.*, 32 S. C. 142, 10 S. E. 932; *Box* v. *Chicago etc. Ry. Co.*, 107 Iowa, 660, 78 N. W. 694.)

The court erred in admitting plaintiff's testimony relative to statements made to him by deceased.

It was hearsay and incompetent, no part of the *res gestae,* and a mere narrative of a past transaction. (*McKeigue* v. *City of Janesville,* 68 Wis. 50, 31 N. W. 298; *People* v. *Ah Lee,* 60 Cal. 85; *Mayes* v. *State,* 64 Miss. 329, 60 Am. Rep. 58, 1 South. 733; *Rulofson* v. *Billings,* 140 Cal. 452, 74 Pac. 35; *Williams* v. *Southern Pac. Co.,* 133 Cal. 550, 65 Pac. 1100.)   The purported declarations were neither spontaneous nor voluntary.   They were in response to questions asked, and were clearly narrative of a past event, in no sense explanatory of the principal fact, or connected with it.   (*Herren* v. *People,* 28 Colo. 23, 62 Pac. 834; *Guild* v. *Pringle,* 130 Fed. 419, 64 C. C. A. 621; *Chicago etc. Ry. Co.* v. *Becker,* 128 Ill. 545, 15 Am. St. Rep. 144, 21 N. E. 524; *Martin* v. *New York etc. Ry. Co.,* 103 N. Y. 626, 9 N. E. 506; *Elguth* v. *Grueszka,* 57 Ill. App. 193; *Leistritz* v. *American Z. Co.,* 154 Mass. 382, 28 N. E. 294; *Parsons* v. *Yaeger Mill Co.,* 7 Mo. App. 594; *Leahey* v. *Cass etc. Ry. Co.,* 97 Mo. 165, 10 Am. St. Rep. 300, 10 S. W. 58; *Lahey* v. *Ottoman & Co.,* 73 Hun, 61, 25 N. Y. Supp. 897; *Richmond & D. R. Co.* v. *Hammond,* 93 Ala. 181, 9 South. 577; *Lissak* v. *Crocker,* 119 Cal. 444, 51 Pac. 688; *State* v. *Deuble,* 74 Iowa, 509, 38 N. W. 383; *Atkinson etc. Ry. Co.* v. *Logan,* 65 Kan. 748, 70 Pac. 878; *Ft. Smith Oil Co.* v. *Slover,* 58 Ark. 168, 24 S. W. 106; *State* v. *Hendricks,* 172 Mo. 654, 73 S. W. 194.)

*Messrs. Maury & Templeman,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

For a statement of the facts in this case, see *McAuley* v. *Casualty Co.,* 37 Mont. 256, 96 Pac. 131.   The case is again in this court on defendant's appeal from a judgment entered against it, on verdict of a jury, and from an order denying its motion for a new trial.

The clauses of the contract which are invoked by the plaintiff to fix a liability on the defendant, read as follows: " (A) In case the assured [Jno. McAuley] shall, during the term of this insurance, sustain bodily injuries effected solely through ex-

ternal, violent and accidental means   *   *   *   which injuries shall, directly and independently of all other causes, result in loss of life, limb, sight or time, as herein defined, the company will pay the amounts below specified: [Here follow specifications.]   (B) If these injuries are received while riding as a passenger in or on a public conveyance, provided for passenger service, and propelled by steam, compressed air, gasoline, naphtha, electricity, or cable, including passenger elevators, or while in a burning building, the amounts otherwise payable under clause A shall be doubled." Then follow clauses C, D, and E, relating to "Special Indemnity," "Optional Indemnity," and "Medical or Surgical Treatment." Then clause F: "If one person over eighteen and under sixty years of age other than the assured is specifically named as beneficiary [in this case Annie McAuley] in the schedule of warranties hereinafter contained, then, and not otherwise, this policy shall also, in consideration of the premium insure the person so named against disability or death caused directly in the manner set forth in clause B, as follows: 'If the death of the beneficiary shall so occur within ninety days from said injuries, the company will pay to the assured the principal sum; or if the beneficiary shall thus suffer loss of limb, or sight, the company will pay to the beneficiary the amount named in clause A for such injury,' " etc.

It was assumed by counsel for defendant upon the first appeal, and not controverted by the plaintiff, that, in order to recover for the death of Annie McAuley by virtue of clause F, it was necessary for the plaintiff to show that the death was caused from bodily injuries which, independently of all other causes, resulted in such loss of life. This court proceeded upon the theory that such interpretation of the contract was the correct one, as is disclosed by the opinion subsequently rendered. Upon the second trial counsel for the respondent contended for a different construction, and the trial court, being of the opinion that the contract would not bear the interpretation originally placed upon it by defendant, refused to instruct the jury, as

requested by defendant's counsel, that plaintiff could not re-
cover unless he proved that the injury received by Mrs. Mc-
Auley "directly and independently of all other causes resulted
in her death." In lieu of these instructions,—there were sev-
eral covering the same point,—the court advised the jury that
plaintiff could not recover unless he established to the satisfac-
tion of the jury, by a preponderance of the evidence, "that the
injuries sustained by Mrs. McAuley were the direct and proxi-
mate cause of her death." The contract, on this point, is so
involved in its terms as to be almost unintelligible. A literal
interpretation thereof seems to sustain the position taken by
the trial court. Clause F refers in terms to "death  *  *  *
caused directly in the manner set forth in clause B," without
any qualification; and clause B may, perhaps, be said to refer
to the manner in which the injury occurs, as well as to the place
of its occurrence. The terms of the policy are, to say the least
of them, ambiguous. It is difficult to determine which of the
respective theories of interpretation contended for by the par-
ties is correct. Under these circumstances the policy should be
liberally construed in favor of the insured. (*Holter Lumber
Co.* v. *Fireman's Fund Ins. Co.,* 18 Mont. 282, 45 Pac. 207.)

But it is contended by the appellant that (1) the plaintiff at
the first trial adopted the theory that the contract provided that
the injury to Mrs. McAuley must have produced her death in-
dependently of all other causes; and (2) that this court placed
that construction upon the contract in deciding the first appeal.
We have searched the record on the former appeal for any evi-
dence that the plaintiff committed himself to, or contended for,
such construction; and, so far as this court is concerned, it is
enough to say that the point was not raised or considered.
Counsel for the respondent, who argued the case at the hearing
of this appeal, frankly stated that he probably misled the court
at the time the first appeal was argued, by not raising the ques-
tion, for the reason that he had not at that time discovered that
the defendant had placed an erroneous construction upon the

policy.   We find no error on the part of the court below in relation to the instructions of which complaint is made.

Appellant earnestly contends that there is no evidence in the case which would warrant the jury's finding that the death of Mrs. McAuley resulted from injuries received while riding as a passenger on the street-car.   It is asserted that in this regard the present case is the same as that made at the first trial, and the language of the court in the original opinion is relied on.   But counsel have failed to consider, or at least they have not quoted in their brief, the entire passage on the subject. The court said: "Whether the disease was introduced into her system through the scratch she received, or whether its baneful properties slumbered in her blood prior to that time, whether it was communicated to her body from her clothing or a bandage, or from some projecting portion of the car, we do not know, the doctors did not know, and the jury could not know."   Not for the purpose of deciding this appeal, but for our own information, we have examined some of the older medical works on the subject of the disease, erysipelas.   We find it there stated that some persons are susceptible to erysipelas.   It is often stated by laymen that an individual is "subject" to erysipelas.   We know of persons who have suffered from the disease many times, and in whom it is said to "break out" at certain seasons.   The record discloses that, at the first trial, Dr. McDonald testified: "It [erysipelas] most frequently enters the system through an avenue of abrasion; through the surface.   It frequently appears where there is no abrasion at all."   In this state of the record the court was clearly justified in concluding that a person could become ill from erysipelas in some manner other than by inoculation from an outside germ, through an abrasion of the skin.   And the difference is vital, for the reason that the jury would not be justified in guessing whether the death resulted from a disease introduced into her system through the hurt to her leg at or about the time she was injured by the street-car, or whether she died from a disease which she already had, but which first manifested itself at the time of the injury,

as the jury was compelled to do under the testimony on the first trial. (See *Barry* v. *Accident Assn.* (C. C.), 23 Fed. 712; *National M. Assn.* v. *Shryock*, 73 Fed. 774, 20 C. C. A. 3.) But we have a different record on this appeal. All of the testimony now shows, in effect, that a person can contract erysipelas in but one way, to-wit, by the introduction of the germ of the disease through an abrasion of the skin. The only logical conclusion is, therefore, that Mrs. McAuley died from erysipelas,—which, the doctors said at the trial, is a form of blood poisoning,—caused by the germs of that disease entering her system through the abrasion of the skin of her leg, which she suffered in alighting from the street-car.

But it is contended by the appellant that this is not sufficient to fix a liability upon it under its contract, for the reason, as they suggest, that the disease germs may have been communicated to the hurt, not at the time of the accident, but from the hands of her husband, or from the bandages or liniment which were immediately thereafter used and applied. But we are of opinion that this contention of the appellant cannot be sustained. These contracts of insurance, like all others, must be construed with a view to carrying out the intention of the parties. (Revised Codes, sec. 5025: Richards on Insurance Law, secs. 384 *et seq.*) The manifest intention of these parties was that, if Mrs. McAuley was injured while riding as a passenger on a street-car, plaintiff should be indemnified, to a certain extent, for his loss. That the disease germs were communicated to Mrs. McAuley's leg from the hands of her husband, or from the bandages or liniment, is mere conjecture; there is no word of testimony on the subject. The jury found that she injured her leg at the time and place in question, and the proof shows that erysipelas manifested itself within the usual time. If a man not learned in the medical profession—one of the neighbors, for instance—were asked what caused Mrs. McAuley's death, he would undoubtedly reply that she scratched her leg getting off a street-car, and that blood poisoning set in, from

which she died. This is the way people generally understand these matters; and why should the courts adopt any other or different method of looking at the ordinary affairs of life? The injury and the erysipelas and the death are proven facts in the case. If Mrs. McAuley had not injured her leg in alighting from the car, there would have been no occasion to apply bandages or liniment, and the probabilities are she would still be alive. The defendant company induced the plaintiff to insure the life of his wife against accidental death—he paid the premium, and she thereafter died from the effects of an accidental injury—and we have no hesitancy in agreeing with the jury that the injury to her leg was the proximate cause of her death. (See *Western Com. Travelers' Assn.* v. *Smith*, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Delaney* v. *Modern Accident Club*, 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603; *Nax* v. *Travelers' Ins. Co.* (C. C.), 130 Fed. 985; *Ward* v. *Aetna Life Ins. Co.* (Neb.), 118 N. W. 70; *Cary* v. *Preferred Acc. Ins. Co.*, 127 Wis. 67, 115 Am. St. Rep. 997, 106 N. W. 1055, 5 L. R. A., n. s., 926.)

It is suggested by the appellant that there is no evidence that Mrs. McAuley was a passenger on the car. It is true that no one testified directly that she was; but the testimony shows that the car stopped at her home, and she alighted. There is no evidence that the car stopped for any other purpose, and we do not think that the jury would have been justified in arriving at any conclusion other than the one embodied in their verdict for the plaintiff. They were charged by the court that she must have been a passenger in order to warrant a verdict in plaintiff's favor.

The next contention is that the evidence is insufficient to justify a finding that proof of death was furnished within two months. Mrs. McAuley died on October 24, 1906. On November 27 following the plaintiff mailed the proofs of death to the defendant company at its home office in New York. The letter was registered. The presumption is that it was received in due course of mail, and, indeed, a letter dated December 7,

1906, from the defendant company to the plaintiff, shows conclusively that the proofs were received.

This action was commenced on April 24, 1907; on October 23, 1907, at the trial, plaintiff was, over defendant's objection, allowed to amend his complaint by alleging that "he had duly performed each and all of the obligations in said contract on him binding." Defendant then objected to the introduction of any testimony in support of the allegations of the complaint, for the reason "that at all times prior to the amendment the complaint did not state facts sufficient to constitute a cause of action, and that on October 23, 1907, the complaint for the first time stated a cause of action; that the amendment could not relate back to the original date at which the complaint was filed or said cause commenced, so as to arrest the running of the six months provided in the policy sued upon, within which said action must be commenced, and for the further reason that the amendment varied the alleged cause of action set forth in the complaint, and that the amendment, so allowed over the objection of the defendant, was a material alteration, and its omission from the original complaint is fatal." The amendment was, we think, properly allowed, and the other point was decided adversely to the appellant's contention in *Clark* v. *Oregon Short Line R. Co.,* 38 Mont. 177, 99 Pac. 298.

The following extract from the record will illustrate the appellant's next assignment of error: Plaintiff, testifying, said: "I saw that she got hurt getting off, and went and met her, and helped her get into the house, and she told me what happened. I see it happened myself." The witness was then allowed to state, over the objection of defendant's counsel, that when he met his wife, not over one-half minute after she alighted from the car, she told him that "she got hurt on the leg getting off the street-car on the step." It is now insisted that this testimony was hearsay; that the statement of Mrs. McAuley was no part of the *res gestae,* and the admission of the evidence was prejudicial error. We cannot so hold. It is unnecessary to decide whether or not the statement was a part of the *res gestae,*

for the reason that, in view of the fact that plaintiff had already testified that he saw that she rceived an injury at the time, the admission of her statement that she did receive such injury could not have influenced the jury or prejudiced the defendant. The admission of the testimony, even though error, was not sufficient to justify a reversal of the order appealed from. (*Rheinheimer* v. *Aetna L. Ins. Co.*, 77 Ohio St. 360, 83 N. E. 491, 15 L. R. A., n. s., 245.)

Another contention of the appellant is that a hypothetical question, propounded to Dr. Allen by counsel for the plaintiff, did not embody all of the testimony on the subject to which it related, and was therefore incompetent. This assignment of error is disposed of by the decision of this court in the case of *State* v. *Crowe, ante,* p. 174, 102 Pac. 579. The question propounded comprehended this inquiry: "If the woman died from erysipelas, what relation, in your opinion as a physician and surgeon, did the scratch or abrasion have to the woman's death?" This portion of the question was particularly objected to, for the assigned reason that it called for the ultimate conclusion, which was exclusively for the jury to draw. The witness answered: "It served as a point of entrance into the system of the germ of erysipelas." We find no error in this ruling. There can be no question, from the testimony, that Mrs. McAuley suffered an abrasion of the skin of her leg; that erysipelas first showed itself at that point, and the abrasion became the center of the outward manifestations of the disease. As heretofore stated, the doctors all testified, in effect, that the germs of erysipelas could not "slumber in the blood," and Dr. Freund testified, on this same subject: "If there is an abrasion, and there is erysipelas, it is presumably the location and the entrance"—and plaintiff testified that there was no other abrasion on his wife's body. We think, under the circumstances, and in view of what was said by this court upon the former appeal, together with the evident necessity for expert testimony on the subject, that the question was a proper one.

We find no reversible error in the record, and the judgment and order are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.