PARK SADDLE HORSE CO., RESPONDENT, *v.* ROYAL INDEMNITY CO., APPELLANT.

(No. 6,203.)

(Submitted November 21, 1927.    Decided December 8, 1927.)

[261 Pac. 880.]

*Accident Insurance — Construction of Contract — Proximate Cause of Loss — Solicitors — Knowledge of Business of Insured—Presumption.*

Contracts—Intention of Parties—Preliminary Conversations may be Considered.
1.    To arrive at the intention of the parties to a written contract, conversations preliminary to its consummation had between them may be considered.

---

1.    Evidence of preliminary negotiations as aid to construction of instrument, see note in 18 Ann. Cas, 257.    See, also, 6 Cal. Jur. 264, 294; 6 R. C. L. 639.

Accident Insurance—Solicitor Presumed to Know Character of Business of Persons Insured.

2. An insurance solicitor is presumed to be acquainted with the character of the business he insures, and the practices of the insured in that business.

Same—Contract to be Given Reasonable Construction, One Liberal in Favor of Insured and Strict Against Insurer.

3. Contracts of insurance must be given a fair and reasonable construction such as intelligent business men would give them, rather than a strict or technical construction; they must be construed liberally in favor of the insured and strictly against the insurer.

Same—Ambiguities and Uncertainties in Contract—How to be Construed.

4. Where a contract of insurance is so drawn as to be ambiguous or uncertain, and is fairly susceptible of two constructions, one favorable to the insured and the other favorable to the insurer, the former must be adopted.

Same—Construction of Policy—Presumption.

5. In construing a policy of insurance indemnifying the insured against hazard in a particular business the words of the agreement are to be applied to the subject matter about which the parties are contracting at the time, the presumption being that that matter was in their minds when contracting.

Same—Construction of Contract in Case at Bar.

6. A contract of insurance indemnifying plaintiff engaged in conducting tourist parties through a national park by way of saddle-horses in charge of guides, against liability to tourists because of bodily injuries by accident "by reason of the maintenance or use of saddle and pack horses" construed to mean by reason of the operation of horses in the insured's business.

Same—Losses—What Constitutes Proximate Cause.

7. In determining the cause of loss for the purpose of fixing the liability of an insurer, when concurring causes of the damage appear, the proximate cause to which the loss is to be attributed is the efficient one which sets other causes in operation, incidental causes, though nearest in point of time and place, not being proximate.

Same—Proximate Cause of Loss—Case at Bar.

8. Under the rule last above (par. 7) *held,* that where a guide in the employ of a company engaged in the business of conducting tourists through a national park by way of saddle-horses negligently lost his way with the result that the tourists were compelled to dismount and go on foot over a steep mountainside, in doing which one of them slipped and was injured, the use of saddle-horses was the proximate cause of the injury rendering the insurer liable under a policy insuring plaintiff against liability

---

3.   See 14 Cal. Jur. 442, 443; 14 R. C. L. 925, 926.

7.   What is proximate cause of loss, see notes in 36 Am. St. Rep. 852; 1 Ann. Cas. 230. See, also, 22 R. C. L. 110.

8.   See 14 R. C. L. 1266.

for injuries to tourists occasioned by the use of horses in its business, and that the negligence of the guide was merely an incidental or contributing cause.

[1]   Evidence, 22 **C. J.**, sec. 1581, p. 1182, n. 73.   Insurance, 33 **C. J.**, sec. 840, p. 115, n 51.
[2–6]   Insurance, 32 **C. J.**, sec. 248, p. 1142, n. 18; sec. 262, p. 1151, n. 80, 81, 83, p. 1152, n. 88; sec. 265, p. 1152, n. 95.   Liability Insurance, 36 **C. J.**, sec. 14, p. 1061, n. 98, 1, p. 1062, n. 4; sec. 54, p. 1082, n. 58 New; sec. 124, p. 1125, n. 34.
[7]   Liability Insurance, 36 **C. J.**, sec. 51, p. 1079, n. 24.
[8]   Liability Insurance, 36 **C. J.**, sec. 51, p. 1079, n. 24.

*Appeal from District Court, Flathead County; C. W. Pomeroy, Judge.*

ACTION by the Park Saddle Horse Company against the Royal Indemnity Company.   From a judgment for plaintiff, defendant appeals.   Affirmed.

*Mr. I. Parker Veazey, Jr.,* and *Mr. R. H. Glover,* for Appellant, submitted an original and a reply brief; *Mr. Glover* argued the cause orally.

Citing on the question of proximate cause of the accident: *Gilson* v. *Delaware & H. Canal Co.,* 65 Vt. 213, 36 Am. St. Rep. 802, 26 Atl. 70; 29 Cyc. 489, 492; *Frassi* v. *McDonald,* 122 Cal. 400, 55 Pac. 139, 772; *Peoria* v. *Adams,* 72 Ill. App. 662; *Leavitt* v. *Bangor etc. R. Co.,* 89 Me. 509, 36 L. R. A. 382, 36 Atl. 998; *Carter* v. *J. H. Lockey Piano Case Co.,* 177 Mass. 91, 58 N. E. 476; *Seccombe* v. *Detroit Electric R. Co.,* 133 Mich. 170, 94 N. W. 747; *Wheeler* v. *Norton,* 92 App. Div. 368, 86 N. Y. Supp. 1095; *Missouri etc. R. Co.* v. *Dobbins* (Tex.), 40 S. W. 861; *Steenbock* v. *Omaha Country Club,* 110 Neb. 794, 195 N. W. 117; *Martino* v. *Rotondi,* 91 W. Va. 482, 36 A. L. R. 6, 113 S. E. 760; *Lemos* v. *Madden,* 28 Wyo. 1, 200 Pac. 791.   As clear a distinction between "proximate" and "remote" cause as we have found is drawn in the case of *Baltimore etc. R. Co.* v. *State,* 33 Md. 542.

The facts disclosed are insufficient to justify reformation of the contract.   It should be borne in mind that the insurance company may make such contract of insurance, subject to

102    Park Saddle Horse Co. *v.* Royal Indem. Co.    [Dec. T. '27

[81 Mont. 99.]

statutory regulations, as it sees fit, and that it is not required to enter into a different contract than it is willing to write. (*Slinkard* v. *Manchester Fire Assur. Co.*, 122 Cal. 595, 55 Pac. 418.)

In 14 R. C. L. 902, the rule is stated as follows: "In accordance with the general principles applicable to all instruments, if, by inadvertence, accident or mistake the terms of the contract are not fully set forth in the policy, it may be reformed so as to express the real agreement, unless the mistake is not mutual and no fraud exists." The fact that one party only must have been mistaken is not sufficient. The written contract must not express the contract of the parties, and this must be either because of mutual mistake of the parties or mistake on the part of one and fraud on the part of the other. Otherwise no reformation will lie. (*Hartford Fire Ins. Co.* v. *Haas*, 87 Ky. 531, 12 L. R. A. 64, 9 S. W. 720; *Dixie Fire Ins. Co.* v. *Wallace*, 153 Ky. 677, Ann. Cas. 1915C, 409, and note, 156 S. W. 140; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240, 14 Am. Rep. 249; *Britton* v. *Metropolitan Life Ins. Co.*, 165 N. C. 149, 80 S. E. 1072; *Aetna Life Ins. Co.* v. *Flour City Ornamental Works*, 120 Minn. 463, 139 N. W. 955.)

The necessity of mutual mistake before a contract can be reformed has been recognized by the supreme court of this state in several cases. (*R. M. Cobban & Co.* v. *Chicago, M. & St. P. Ry. Co.*, 52 Mont. 256, 157 Pac. 173; *Hoskins* v. *Scottish Union & Nat. Ins. Co.*, 59 Mont. 50, 195 Pac. 837.) If mistake at all existed, and it was only unilateral, no reformation can be made. (*Comerford* v. *United States F. & G. Co.*, 59 Mont. 243, 196 Pac. 984.)

Acceptance and retention of policy by respondent for two and one-half years after notification of attitude of insurance company denying liability is a bar to reformation. (*Wagner* v. *Westchester Fire Ins. Co.* (Tex.), 48 S. W. 49; *Avery* v. *Equitable Life Assur. Soc.*, 117 N. Y. 451, 23 N. E. 3; *Graham* v. *Mutual Life Ins. Co. of New York*, 176 N. C. 313, 97 S. E.

6; *National Union Fire Ins. Co.* v. *John Spry Lbr. Co.,* 235 Ill. 98, 85 N. E. 256; *Comerford* v. *United States F. & G. Co.,* supra.)

*Messrs. Walchli & Korn,* for Respondent, submitted a brief; *Mr. Hans Walchli* argued the cause orally.

The entire trend of the argument of counsel for appellant is based on the proposition and assumption that the policy in question covers only accidental injuries caused by the saddle-horses, and that the negligence of the guide in misguiding the party cannot be the foundation of liability under the policy. With this contention we cannot agree. The policy covers accidental injuries "arising by reason of the maintenance and/or use of saddle and pack horses." There could be many instances where personal injuries would arise out of the use of the saddle-horses that would not be caused by the saddle-horses. The horses were useless without a guide. No saddle-horse trips could be taken without him. Their very use was dependent and conditioned upon the use of the services of a guide. In fact, the guide was the chauffeur of the saddle-horse party just as much as the chauffeur of a passenger touring car is the chauffeur and operator of such car. Certainly, it will not be contended that a policy of liability insurance on an automobile protecting the owner from personal injuries arising "by reason of the ownership, maintenance and/or use of the automobile" does not cover the case of personal injuries inflicted by the automobile through its negligent operation by the chauffeur or driver in charge. (See *Fullerton* v. *United States Casualty Co.,* 184 Iowa, 219, 6 A. L. R. 367, 167 N. W. 700; 36 C. J. 1084; also, *Independent M. & C. Co.* v. *Aetna Life Ins. Co.,* 68 Mont. 152, 216 Pac. 1109; *United States* v. *Virginia Shipbuilding Corp.,* 275 U. S. 676, 72 L. Ed. 346; *Dolph* v. *Maryland Casualty Co.,* 303 Mo. 534, 261 S. W. 330.)

The accidental injury arose out of the use of the horse. The proximate and efficient cause of the situation in which

the injured person found herself and of her resulting injury
was the fact that she had been carried there by the horse
through the negligence or else the wilful act of the guide in
bringing her in this place of danger, from which she had to
extricate herself the best she could. The negligence of the
guide in the use of the horse had created the situation in
which she found herself, and the resulting injury was the
natural and probable sequence of the condition in which she
found herself, and was naturally produced from that situation
without any independent or efficient intervening causes.
(*Aetna Ins. Co.* v. *Boon,* 95 U. S. 117, 24 L. Ed. 395 [see,
also, Rose's U. S. Notes] ; *Travelers Ins. Co.* v. *Seaver,* 86
U. S. (19 Wall.) 531, 22 L. Ed. 155; *Russell* v. *German Fire
Ins. Co.,* 100 Minn. 528, 10 L. R. A. (n. s.) 326, 111 N. W. 400;
*Hocking* v. *British American Assur. Co. of Toronto, Can.,* 62
Wash. 73, Ann. Cas. 1912C, 965, 36 L. R. A. (n s.) 1155, 113
Pac. 259; *Devitt* v. *Providence Washington Ins. Co.,* 70 N. Y.
Supp. 654, 61 App. Div. 390; *Tyson* v. *Union Ins. Soc. of
Canton,* 8 Fed. (2d) 356; *Robinson* v. *National Life & Acc.
Ins. Co.,* 764 Ind. App. 161, 129 N. E. 707; *United States
Fidelity & Guaranty Co.* v. *Hood,* 124 Miss. 548, 87 South.
115.)

The case at bar is analogous to cases where a person, through
the negligence of someone else, finds himself in a place of
danger, and is injured while using due prudence in attempting
to escape from the apparent danger. That is, it seems to be
within the "in extremis" rule of the law of negligence. It is
within the further rule that where one finds himself in a
place of danger through the negligence of another, he should
do everything possible to avoid injury or to minimize the dan-
ger. It is within the principle of the further rule that where a
person sees another in extreme danger and such person while
using due care is injured while attempting to save such other
person, the proximate cause of the injury is the original negli-
gence creating the original danger. The following citations
are illustrations and in support of the foregoing principles:

*Bracey* v. *Northwestern Improvement Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; *Aetna Ins. Co.* v. *Boon,* 95 U. S. 117, 24 L. Ed. 395; *Wright* v. *Aetna Life Ins. Co.,* 17 Fed. (2d) 596; 29 Cyc., p. 500, par. 3.

On the question of reformation, we think that the facts of this case bring it fairly within the scope of the decision of this court in the case of *Stevens* v. *Equity Mutual Fire Ins. Co.,* 66 Mont. 461, 213 Pac. 1110; see, also, *Equitable Safety Ins. Co.* v. *Hearne,* 87 U. S. 494, 22 L. Ed. 390, 398.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an action upon an insurance policy issued by the defendant to the plaintiff.

Park Saddle Horse Company, the plaintiff, in the summer of 1924, was engaged in the saddle and pack horse business in Glacier National Park under a special concession therefor from the United States authorizing the plaintiff to conduct saddle-horse parties through the Park during the season, which was from June 15 to September 15. During the peak of the season, which was in July and August, the plaintiff made use of 700 horses. These were used principally in conducting saddle-horse parties on pleasure and sight-seeing trips over the mountain trails of Glacier National Park. The parties varied in size; each tourist was furnished a saddle-horse and each party had at least one guide. Most of the trips consumed but one day, the party leaving chalets or hotels in the morning and reaching other chalets or hotels in the evening. The parties pursued established trails. The tourist rode horseback throughout the entire distances except for temporary dismountings as a means of relief and rest to the horses and themselves, and especially when traversing steep or dangerous places. It was the duty of the plaintiff to use due care to guide and conduct parties safely and to provide against parties becoming strayed or lost. The rules and regulations of the National Park Service governing and controlling saddle-

horse trips conducted by the plaintiff require that each saddle-horse party shall have at least one guide, licensed by the government, whose duty it is to look after and conduct the party, the guides being in the employ of the plaintiff.

On July 18, 1924, a party of four tourists engaged the plaintiff at the established rates, to conduct them as a saddle-horse party on a two days' trip over established mountain trails in the Park. The first day's trip was from the Glacier Park entrance to Two Medicine chalet, and the second day's trip was to be from Two Medicine chalet to the Cut Bank chalet. Each member of the party was furnished with a saddle-horse and the party was placed in charge of a regular guide. None of the party was familiar with the trails nor with the surrounding country. Its members would not have taken the trip if they had not had the saddle-horses to ride and the necessary guide. On the second day, upon arriving at the top of Dawson Pass, a part of the trip, the guide carelessly and negligently lost his way and misguided the party into the mountains and forests where there was no trail. The party was out two and a half days and two nights, without food or shelter. In order to proceed on the trip, and while the party was lost, and in going down the steep mountainsides and inclines which they traversed, it was necessary from time to time for the tourists to dismount from their horses, and the guide directed them to dismount; and at one place, while dismounted at the direction of the guide, one of the ladies of the party, in going on foot over a steep mountainside, where there was no path nor trail, and while she was using due care, slipped, caught her heel, and fell, wrenching and twisting her knee and injuring her leg. The party rode their horses the entire distance until they arrived at the steep precipice or incline where the accident occurred. Reasonable care and prudence for the rider's safety and for the safety of the horse in going over the steep incline where the accident occurred required that the rider be dismounted and that she walk down the mountainside. After the accident she again

mounted and rode the horse. The accident having been caused by the negligence of the plaintiff, as above described, the plaintiff later paid the injured person a thousand dollars on account of the personal injuries she had sustained. No question is raised as to the propriety of the settlement between the plaintiff and the injured person.

During the year 1924 the horses covered by the indemnity policy were kept for the primary purpose of conducting saddle-horse parties through the Park, pack-horses being used as merely incidental to the main purpose. The plaintiff was not authorized to and did not conduct pedestrian trips.

In a conversation in March, 1924, at St. Paul, between G. W. Noffsinger, president of the plaintiff, and W. C. Kenney, as insurance solicitor of the defendant company, they discussed the matter of workmen's compensation insurance, and public liability insurance, covering the operations of the Park Saddle Horse Company for the season of 1924. The solicitor did not produce any sample policy and there was not any discussion as to what the terms of the policy should be. At that time Mr. Noffsinger said that he would consider both compensation and public liability insurance, to cover the operations of the saddle-horse business for that year in connection with employees, and in connection with personal injury claims presented by the public arising out of that business; but it was not agreed between them what the policy terms should be or what particular operations or features of the business the policy should cover. After this conversation in St. Paul, a number of letters and telegrams passed between Mr. Noffsinger and Mr. Kenney concerning the matter, but there was no special reference in the correspondence respecting the terms of the policy. However, none of the correspondence was inconsistent with the conversation held in St. Paul.

About the 14th of June, 1924, in consideration of the sum of $275, which the plaintiff paid to the defendant, the defendant entered into a contract of indemnity with the plaintiff, and later, in consideration of the payment by the plaintiff to

the defendant of the additional sum of $1,170.12, there was attached to the policy an additional rider which became effective July 3, 1924.

On July 7th, in transmitting the policy, Mr. Kenney wrote: "We are enclosing herewith public liability policy No. TP–6519 Royal Indemnity Company, in accordance with our recent correspondence. Trusting that this policy will be satisfactory, and thanking you for favoring us with your business, we beg to remain," etc.

Mr. Noffsinger never made any objection to the policy or to its terms until after this suit was begun. The defendant did not have a form of policy suitable to the particular business but made use of what is termed a Teams Policy (Public Liability Only) and attempted to adapt that to plaintiff's case. This policy provides that if, between noon of the 15th of June, 1924, and noon of the 15th of September, 1924, "any person or persons, other than employees of the insured, shall sustain any bodily injuries by accident, whether resulting fatally or otherwise, by reason of the ownership, maintenance or use, in connection with the insured's trade or business as described in Statement 3 of the Schedule, of the draught or driving animals or vehicles, constituting the insured's teams, as described in Statement 4 of the Schedule, for which injuries the insured is liable for damages, then the company will indemnify the insured against loss arising out of such liability up to an amount not exceeding" so much money.

Schedule 3. described the trade or business as saddle and pack horses, and Schedule 4 as saddle and pack horses to be used in Glacier National Park, Montana, and vicinity. The rider provides: "It is understood and agreed that the undermentioned policy is intended to apply and shall apply exclusively to liability as in the policy defined and limited, arising by reason of the maintenance and/or use of saddle and pack horses." By the rider of July 3, the policy was made to cover 700 head of horses.

After the injured tourist made claim upon the plaintiff for damages on account of the accident, the plaintiff notified the defendant of the fact and demanded protection under the terms of the policy. The defendant denied liability. After the settlement and prior to the commencement of this action, the plaintiff demanded of the defendant reimbursement for the amount paid out and for the expenses incurred. The defendant again refused, denying liability. This suit resulted.

All of the foregoing appears in an agreed statement of facts stipulated by the parties. The litigants agreed that the pleadings should be deemed amended to conform to the stipulation of the facts and that the court might decree a reformation of the policy if it deemed the facts sufficient to warrant that action. Upon consideration the court reformed the policy by substituting in place of the words ''by reason of the maintenance and/or use of saddle and pack horses'' the words ''out of assured's saddle and pack horse business.'' Thereupon judgment was rendered for plaintiff, from which the defendant has appealed.

1. Throughout the argument there is a wide divergence between respective counsel as to the intent and meaning of the language of the insurance contract or policy, sued upon. Defendant's counsel insist that the contract is not susceptible of the broad construction given it by the trial court. They seek to limit the meaning of the language of the contract. They inquire whether the injury by the usual course of events resulted from the mere ownership, use or maintenance of the horses, with no acts or omissions of these animals contributing directly to the injury, or did it result from the use and maintenance of the guide and his negligence in losing his way and negligently failing to help the tourist down the steep slope when she was dismounted and going on foot?

Defendant insured plaintiff against loss arising out of liability for bodily injuries sustained by persons other than plaintiff's employees, by reason of the maintenance and use, or maintenance or use, of saddle and pack horses in connection

with plaintiff's business. What is the meaning of the language "by reason of the maintenance and use of saddle horses in connection with plaintiff's business?"

If the insurer had intended to limit the liability of the insured which it proposed to indemnify for injuries received by patrons of the plaintiff from the direct action of horses—if it proposed to indemnify for injuries received because riders were thrown from horses, or kicked, struck, bitten or otherwise hurt by horses—it would have been easy to say so; but there is no such statement. The policy does not especially refer to injuries caused by horses; it says by reason of the use of horses, in connection with the insured's business. The St. [1] Paul conversation, to which reference may be made to ascertain the intention of the parties (*United States National Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084; *Anderson* v. *Border,* 75 Mont. 516, 244 Pac. 494), and the language of the policy itself evidence a broader intent and purpose than defendant's counsel are willing to concede.

There can be no doubt that Noffsinger desired insurance [2–6] to cover the operations of the Park Saddle Horse Company, nor that Kenney, who represented the insurer, knew and appreciated that fact. What particular operations or features of the business the policy should cover were not discussed, but Kenney knew the character of the insured's business and knew, or will be held to have known, its practices in that business. As Lord Mansfield said: "Every underwriter is presumed to be acquainted with the practice of the trade he insures, and if he does not know it, he ought to inform himself." (*Noble* v. *Kennoway,* 2 Doug. (Mich.) 513; quoted in *Hearne* v. *New England Mutual Marine Ins. Co.,* 20 Wall. (U. S.) 488, 22 L. Ed. 395 [see, also, Rose's U. S. Notes].)

When the policy was written it purported to cover injuries occurring through accident by reason of the ownership, maintenance or use, or maintenance and use, of the saddle and pack horses in connection with insured's business. It seems to us that this means by reason of the operation of these horses in

the insured's business. This is a plain and common-sense interpretation of the language of the contract and what the parties intended.

Contracts of insurance should be given a fair and reasonable construction such as intelligent business men would give them, rather than a strict or technical construction. It should be borne in mind that it is a cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. (32 C. J. 1152.) Whenever a contract of insurance is so drawn as to be ambiguous or uncertain, and to require construction, and the contract is fairly susceptible of two constructions, one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted. (*Montana Auto Finance Corp.* v. *British & Federal Fire Underwriters,* 72 Mont. 69, 36 A. L. R. 1495, 232 Pac. 198; *McAuley* v. *Casualty Co.,* 39 Mont. 185, 102 Pac. 586.) It is also an established principle that in construing policies of this general character the words of the agreement are to be applied to the subject matter about which the parties are contracting at the time, the presumption being that the matter is in the minds of the parties when contracting. (*Holter Lumber Co.* v. *Firemen's Fund Ins. Co.,* 18 Mont. 282, 45 Pac. 207.)

We do not see that the phrase "out of assured's saddle and pack horse business," inserted in the contract by way of reformation, has in legal effect a meaning different from what was written into the contract by the insurer. Therefore we do not find it necessary to consider the rules which govern the reformation of contracts which counsel have discussed exhaustively.

2. The main question is whether the use of the saddle-horses [7] was the proximate, or only the remote, cause of the accident. Counsel for defendant insist that the proximate cause was the negligence of the guide in losing his way and conducting the party to a place of danger. Respective counsel have cited many cases in support of their respective theories. After an examination of these authorities and a thorough dis-

cussion of the facts about the consultation table, we have concluded that the use of the horses was a proximate, and the efficient, cause of the injury. The party set out to make a trip through the Park by the use of saddle-horses, in charge of a guide. If it had not been for the saddle-horses the trip would not have been undertaken and it was by the use of the horses, and not otherwise, that the party arrived at the place of danger. As a protection, not only to the rider but to the horse, it was deemed necessary for the rider to dismount and to proceed on foot. The entire transaction grew out of, and the accident happened on account of, or by reason of, the use of the horses, and it grew out of the use of horses in the operation of the insured's business.

"In determining the cause of loss for the purpose of fixing the insured's liability, when concurring causes of the damage appear, the proximate cause to which the loss is to be attributed is the dominant, the efficient, one that sets other causes in operation, and causes which are incidental are not proximate, though they may be nearest in time and place to the loss." *(Hartford Steam Boiler & Inspection & Ins. Co. v. Pabst Brewing Co.*, 201 Fed. 617, Ann. Cas. 1915A, 637.) Along the same line is *Aetna Ins. Co. v. Boone*, 95 U. S. 117, 24 L. Ed. 395 [see, also, Rose's U. S. Notes], in which the supreme court of the United States said: "The question is not what cause was nearest in time or place to the catastrophe; that is not the meaning of the maxim '*causa proxima, non remota spectatur.*' The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation." (*Travelers' Ins. Co. v. Seaver*, 19 Wall. (U. S.) 531, 22 L. Ed. 155 [see, also, Rose's U. S. Notes]; *Tyson v. Union Ins. Soc.*, 8 Fed. (2d) 356; *Wright v. Aetna Life Ins. Co.*, 17 Fed. (2d) 596.)

The fundamental, efficient moving cause of the accident was [8] the conveyance of the party to the place of the accident by use of horses and the inability of the horses to carry the party over the dangerous ground with safety, necessitating the dismounting of the party whose members were compelled to walk

over the dangerous place. In this view it cannot be said with reason that the accident was not caused efficiently and proximately by the use of horses in the operation of the insured's business or, to follow the language of the policy, "by reason of the maintenance and use of saddle-horses" in connection with the insured's business. That the guide was negligent in losing his way was a contributing cause. It brought the saddle-horse party upon their horses to the place of danger. Otherwise the injured tourist would not have been there. The argument that the same thing might have happened to a party of pedestrians led by the same guide is beside the mark. That did not happen. What happened was that which befell the saddle-horse party, which would not have happened but for the fact that it was a saddle-horse party operated in connection with plaintiff's business.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.