DEVORE, RESPONDENT, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

(No. 7,599.)

(Submitted January 7, 1937. Decided January 23, 1937.)

[64 Pac. (2d) 1071.]

600

*Mr. Charles R. Leonard* and *Mr. W. D. Kyle,* for Appellant, submitted a brief; *Mr. Kyle* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief and argued the cause orally.

604

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover disability benefits under a life insurance policy covering disability losses. The complaint sought the sum of $50 per month from March 24 to September 9, 1934, and from February 9 to July 24, 1935, the date the action was commenced. It also sought recovery of the sum of $258.75, being the amount paid as premiums which plaintiff alleged the defendant had agreed to waive by provisions in the insurance contract.

The complaint was challenged by general and special demurrer. The demurrer was overruled and defendant answered.

The cause was tried to a jury. The court by instructions advised the jury that there could be no allowance of benefits accruing after June 20, 1935. The jury found for plaintiff in the sum of $752.09, with interest from July 24, 1935. Defendant's motion for new trial was denied and it appealed from the judgment entered on the verdict.

The important facts were undisputed. The point of difference between the parties hinges upon the meaning of the insurance policy. The policy provisions requiring disability payments were as follows:

"And if the Insured is totally and presumably permanently disabled before age 60, [the insurer] will pay disability benefits (a) Income and (b) waiver of premium, to the Insured Fifty Dollars monthly during such disability, increasing after five and ten years continuous disability, besides waiving premium payments, all upon the conditions set forth in Section 3. * * *

"Section 3. Benefits in event of total and permanent disability before age 60.

"Total disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

"Permanent disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured; or,

"(b) If such disability has existed continuously for ninety days. When benefits become effective.—If, before attaining the age of sixty years and while no premium on this policy is in default, the Insured shall furnish to the company due proof that he is totally and permanently disabled, as defined above, the company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues.

"Benefits (a) Increasing Income.—The company will pay a monthly income to the Insured * * * while total and permanent disability continues. * * *

"Special Disabilities.—The entire and irrevocable loss of the sight of both eyes, or of the use of both hands or both feet or one hand and one foot, will be considered total and permanent disability.

"General Provisions.—The company may, before making any income payment or waiving any premium, require due proof of the continuance of total and permanent disability, but such proof shall not be required oftener than once a year after such disability has continued for two years. If such proof is not furnished on demand or if it shall appear to the company that the Insured is no longer totally and permanently disabled, no further income payments will be made or premiums waived. * * *

"If the Insured shall at any time so recover that the payment of Disability Benefits terminates and later shall furnish proof that he has again become totally and permanently disabled, Disability Benefits shall be the same in amount and subject to the same conditions as if no prior disability had existed."

The record shows that plaintiff, a veterinarian by profession, was injured on July 24, 1932, while the policy of insurance was in effect, by being shot in the neck, right thigh and in the

left hand while engaged in an encounter with bank robbers, he then being the sheriff of Gallatin county. The defendant paid him $50 per month as disability benefits from August 24, 1932, to March 24, 1934, and from September 9, 1934, to February 9, 1935. It was conceded that plaintiff paid to defendant the annual premium of $258.75 in August, 1934, by borrowing that amount on his policy of insurance.

At the time this action was commenced plaintiff was in the employ of the federal government in the capacity of junior veterinarian testing cows for the Bang's disease. He had a helper working with him. About all that plaintiff did in this employment was to draw blood from the jugular vein with a needle, and this he did with his "good" hand. He started to receive compensation under this employment on June 20, 1935. In May, 1933, plaintiff, his wife and small boy drove from Bozeman to Iowa, his wife driving the car save that he may have driven a few miles. His daughter drove the car back to Bozeman. While in the east he made a trip or two from Corning, Iowa, to Omaha, a distance of 84 miles, on which trips he may have driven a few miles.

In May, 1934, plaintiff became a candidate for county treasurer of Gallatin county and waged an unsuccessful campaign traveling about the county in a car, his son-in-law doing the driving. In September, 1934, he went to Rochester and there underwent an operation on his shoulder. There was medical testimony showing that at the time of the trial plaintiff's left arm was practically useless; the muscles of the shoulder and arm were shrunken and atrophied and the arm partially paralyzed; but there was evidence that plaintiff at the time of the trial was physically able to handle clerical work or could act as a night watchman or pursue some similar gainful occupation, if such were available. There was ample evidence to support the conclusion that between the time of receiving his injuries and the 20th of June, 1935, plaintiff was unable to perform, and did not perform, any work of any kind, and that it was impossible for him to follow any gainful occupation.

610

Defendant contends that, since plaintiff was actually in the ██ ██ employ of the government in July, 1935, at the time this action was commenced, it is conclusively shown that he was not totally and permanently disabled within the meaning of the insurance contract. Plaintiff takes the opposite view and contends that the contract, under the circumstances here presented, should be construed as a straight disability contract. These opposing contentions make it necessary for us to interpret the contract of insurance. In doing so we keep in mind that it is the established rule in this state that such contracts should be liberally construed in favor of the insured. (*McAuley* v. *Casualty Company of America*, 39 Mont. 185, 102 Pac. 586; *Libby Lumber Co.* v. *Pacific States Fire Ins. Co.*, 79 Mont. 166, 255 Pac. 340, 60 A. L. R. 1; *Park Saddle Horse Co.* v. *Royal Indemnity Co.*, 81 Mont. 99, 261 Pac. 880; *Fayle* v. *Camden Fire Ins. Assn.*, 85 Mont. 248, 278 Pac. 509; *Cacic* v. *Slovenska etc. Soc.*, 102 Mont. 438, 59 Pac. (2d) 910.)

There is no serious contention that plaintiff was not totally disabled during the period for which recovery is sought here. In other words, it is lack of permanency, and not of totality, of disability that gave rise to this controversy. What, then, does the contract mean when it refers to a presumably permanent disability?

Section 3 of the policy in effect provides that "total disability shall, during its continuance, be presumed to be permanent," if it is reasonably certain that such disability will continue for life, or if it has existed continuously for ninety days. When proof is furnished of total and permanent disability as defined in the policy, the company is obligated to pay benefits "so long as such disability continues." This negatives the idea that the parties contracted for benefits only in case the disability be absolutely permanent. A fair interpretation of the contract leads inevitably to the conclusion that if the disability has existed continuously for ninety days it shall be presumed to be permanent and is compensable so long as it actually continues. Other provisions of the policy indicate an intention that the insurer is liable during the

continuance of the total disability. Thus, under the general provisions of the policy, the company is given the right to demand proof of the continuance of the disability, but not oftener than once a year after the disability has existed for two years.

Those general provisions also declare that disability benefits may be terminated because of the recovery of the insured, and revived upon a proper showing of recurrence of disability. Taken by its four corners, the policy in question calls for disability benefits covering the period of time here involved, plaintiff during that time being totally disabled, even though at the time the action was instituted the plaintiff was employed in a gainful occupation. Courts have thus interpreted similar contracts. (*Gibson* v. *Equitable Life Assur. Soc.*, 84 Utah, 452, 36 Pac. (2d) 105; *New York Life Ins. Co.* v. *Razzook*, (Okl.) 61 Pac. (2d) 686; *Mitchell* v. *Equitable Life Assur. Soc.*, 205 N. C. 725, 172 S. E. 495; *Dietlin* v. *Missouri State Life Ins. Co.*, 126 Cal. App. 15, 14 Pac. (2d) 331, 15 Pac. (2d) 188; *Kurth* v. *Continental Life Ins. Co.*, 211 Iowa, 736, 234 N. W. 201; *Maze* v. *Equitable Life Ins. Co. of Iowa*, 188 Minn. 139, 246 N. W. 737.)

Counsel for defendant strongly rely upon the case of *Mitchell* v. *Equitable Life Assur. Soc.*, 205 N. C. 721, 172 S. E. 497, but the policy in that case did not cover liability for ''presumably'' permanent disability as does the contract here. This distinguishing feature resulted in a different conclusion by the same court in a case decided on the same day as the latter case, being the case of *Mitchell* v. *Equitable Life Assur. Soc.*, 205 N. C. 725, 172 S. E. 495.

Defendant also relies upon the following cases: *Job* v. *Equitable Life Ins. Co. of Iowa*, 133 Cal. App. (Supp.) 791, 22 Pac. (2d) 607; *Graham* v. *Equitable Life Assur. Soc. of U. S.*, (Iowa) 266 N. W. 820; *Turcotte* v. *Prudential Ins. Co. of America*, 87 N. H. 440, 182 Atl. 9; *Wetherall* v. *Equitable Life Assur. Soc. of U. S.*, 273 Mich. 580, 263 N. W. 745; *Lewis* v. *Metropolitan Life Ins. Co.*, (La. App.) 142 So. 262; *Ginell* v. *Prudential Ins. Co. of America*, 237 N. Y. 554, 143 N. E.

740; *Brod* v. *Detroit Life Ins. Co.*, 253 Mich. 545, 235 N. W. 248; *Metropolitan Life Ins. Co.* v. *Blue*, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; *Richards* v. *Metropolitan Life Ins. Co.*, 184 Wash. 595, 55 Pac. (2d) 1067; *Read* v. *Metropolitan Life Ins. Co.*, 206 N. C. 458, 174 S. E. 307; *Martin* v. *Travelers' Ins. Co.*, 310 Mo. 411, 276 S. W. 380, 41 A. L. R. 1372; *Triplett* v. *Equitable Life Assur. Soc. of U. S.*, (W. Va.) 186 S. E. 124; *Thorne* v. *State Mutual Life Assur. Co.*, (N. J. L.) 177 Atl. 665. Whether we would follow these cases under contracts such as there involved we need not now decide. It is sufficient to say that these and other cases of like import are not controlling here. They did not deal with contracts awarding benefits for "presumably" permanent disability.

The North Carolina as well as some of the other cases above cited point out the reasons for a different result under policies awarding benefits for total disability "presumably" permanent. If defendant's contention were sound, then an inducement would be held out to all insurance companies under such policies to defer making any payments for any disability as long as possible with the hope that the insured might recover before action was commenced. We cannot so interpret the contract in question here. Under the policy here under consideration the presumption of permanency gave plaintiff the right to benefits so long as the disability continued, and the evidence is ample to warrant a finding that it continued throughout the period for which recovery was sought and allowed. The fact that plaintiff was producing an income at the time the action was commenced operated merely to cut off his right to benefits while able to work, but did not deprive him of the right to benefits during the continuance of the disability.

Defendant asserts that the complaint is open to the objection of alleging conclusions of law, in that it is alleged therein how plaintiff was injured and that the injuries rendered him totally and permanently disabled and rendered it impossible for him to follow a gainful occupation. These are allegations of ultimate facts and not conclusions of law. (*McElfresh* v.

*Odd Fellows Acc. Co. of Boston,* 21 Ind. App. 557, 52 N. E. 819; *Clark* v. *Brotherhood of Locomotive Firemen,* 99 Mo. App. 687, 74 S. W. 412; *Maryland Casualty Co.* v. *McCallum,* 200 Ala. 154, 75 So. 902.)

The case of *Parten* v. *Jefferson Standard Life Ins. Co.,* 30 Ga. App. 245, 117 S. E. 772, is relied upon by defendant. But there the complaint otherwise showed only a broken leg which the court held contradicted the allegation of total disability and inability to pursue a gainful occupation. Where there is no such contradiction the Georgia courts sustain a complaint such as the one here. (*New York Life Ins. Co.* v. *Thompson,* 45 Ga. App. 638, 165 S. E. 847.) Here there is no such contradiction. On the contrary, other allegations are consistent with total disability, for it is here alleged, in effect, that defendant recognized the totality of the disability by making some disability payments under the policy. The complaint is not open to the objection here made.

Defendant contends that the verdict of the jury is contrary to Instruction No. 24, as follows: "You are instructed that total disability does not mean helplessness or complete disability, but it includes more than that which is partial. Permanent disability means that which is continuing as opposed to what is temporary. Separate and distinct periods of temporary disability do not constitute that which is permanent." By Instruction No. 16 the jury was told that before the plaintiff could recover he must prove that his disability was continuous in character and without interruption. The jury was warranted in finding from the evidence that plaintiff's disability during the time for which benefits were claimed was continuous and without interruption, and such a finding is consistent with Instruction No. 24.

Defendant predicates error in overruling its objection to a question, propounded to Dr. McCarthy, designed to elicit his opinion as to whether plaintiff could follow any gainful occupation. The answer to the question was as follows: "Well, any occupation that would require physical effort, the man cannot do. I am somewhat acquainted with the work

required of a veterinary surgeon, and it is somewhat along our line; the human animal does not differ materially. I imagine that to handle horses and cattle and yearlings would be a two-handed job, and Mr. DeVore has not any use of his left arm. That weakness extends into the left part of his chest and into his body and to the back of his left side, and he has atrophy of the muscles of the back and that condition will increase, atrophy, loss of power and shrinkage of the muscles; they will continue to shrink until they have no power."

It is quite generally held by the federal courts that opinion evidence of whether a person is able to follow a gainful occupation is inadmissible as invading the province of the jury. (*United States* v. *Sauls*, 65 Fed. (2d) 886; *United States* v. *Cole*, 82 Fed. (2d) 655; *United States* v. *Frost*, 82 Fed. (2d) 152; *Deadrich* v. *United States*, 74 Fed. (2d) 619; *United States* v. *Hibbard*, 83 Fed. (2d) 785; *United States* v. *White*, 77 Fed. (2d) 757; *United States* v. *Sampson*, 79 Fed. (2d) 131.) Some courts have held that such evidence is admissible. (*Cooper* v. *Metropolitan Life Ins. Co.*, (Pa.) 186 Atl. 125; *Principi* v. *Columbian Mut. Life. Ins. Co.*, 169 Tenn. 276, 84 S. W. (2d) 587; *Gilchrist* v. *Kansas City Rys. Co.*, (Mo.) 254 S. W. 161; *Gaty* v. *United Rys. Co.*, (Mo.) 251 S. W. 61; *Bankers Lloyds* v. *Montgomery*, (Tex. Civ. App.) 42 S. W. (2d) 285.) The evidence here complained of was not of the character that could be said to be objectionable as invading the province of the jury. The answer of the witness was nothing more than an explanation of the character of plaintiff's injuries, with the opinion that plaintiff could not engage in an occupation requiring physical effort. Such evidence was competent under subdivision 9 of section 10531, Revised Codes. Also, it appears here that defendant first introduced the testimony of a physician that plaintiff was able to pursue a gainful occupation. Under such circumstances the federal court in *Prevette* v. *United States*, 68 Fed. (2d) 112, held that there was no prejudicial error in permitting this to be rebutted.

Defendant complains of the court's action in fixing June 20, 1935, as the date beyond which there could be no recovery. Since this is the date when plaintiff commenced working for the government, the court's action in limiting recovery to that time could not have prejudiced defendant. Whether the time for receiving benefits actually expired sooner than June 20 was, under the evidence, a question for the jury. If there was evidence that the disability still continued on and after June 20, defendant would be in no position to complain that the court limited recovery to June 20.

Defendant also contends that Instruction No. 7, which placed the burden of proof on defendant, after plaintiff's disability was shown to be total and permanent for ninety days, to show that the disability had ceased, was in conflict with other instructions given. There is no merit in this contention.

Defendant contends that plaintiff is not entitled to recover the premium paid by him, because he admitted on cross-examination that he borrowed the money from defendant on his policy. This contention cannot be sustained. The loan value of plaintiff's policy was reduced by the amount which he borrowed to pay the premium in question. Had he not borrowed this money and paid the premium, the loan value of his policy would be just that much greater.

Error is predicated upon the court's refusal to give defendant's offered Instructions Nos. 28 and 29, which were as follows: "28. You are instructed that the defendant, in making proof of its defense, is not required to prove such a defense by a preponderance of the evidence, and if, therefore, you find evidence of the plaintiff and the evidence of the defendant to be in balance, then you are instructed to return your verdict for the defendant." "29. You are instructed that the burden is on the plaintiff to prove by a preponderance of the evidence that the disability asserted by him was total and permanent and prevented him from following any substantially gainful occupation." By other instructions the jury was told that the burden rested with plaintiff to prove that he was totally and permanently disabled, as those terms are de-

fined in the policy of insurance, and Instruction No. 6, which was given by the court, advised the jury that a disability is total when it renders it impossible for plaintiff to follow a gainful occupation. The instructions as a whole fairly placed the burden upon plaintiff to show that his disability was total and continuous for ninety days, and that then the burden was on defendant to prove that plaintiff was not disabled during some or all of the time benefits were claimed, before defendant could defeat plaintiff's right thereto. This was in accordance with the contract between the parties.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.