## RICE OIL CO. et al. v. ATLAS ASSUR. CO., Limited.

### No. 8853.

Circuit Court of Appeals, Ninth Circuit.
March 13, 1939.

R. H. Glover, S. B. Chase, Jr., and John D. Stephenson, all of Great Falls, Mont., for appellants.

I. W. Church and Art Jardine, both of Great Falls, Mont., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

In 1926, appellants Rice Oil Company and Fulton Oil Company, who were extensively engaged in gas and oil production in the State of Montana under operating agreements with and leases from various persons, sold certain leases and buildings, structures, tanks and equipment thereon, to Marine Corporation for $1,000,000.00 in cash and $2,000,000.00 to be paid out of net oil.

It was provided in said contract that there was expressly reserved to Fulton Oil Company and Rice Oil Company "the first net oil which may be produced and saved from all or any of the above described property, until there shall have been received by said corporations, jointly, the sum of two million dollars ($2,000,000.00)."

The physical possession of all the property also was reserved to Fulton Oil Company and Rice Oil Company jointly for operating purposes. From the oil produced it was provided that the land owners who had leased the lands to W. E. Rice, Fulton Oil Company and Rice Oil Company should first receive the royalties reserved in the respective leases and also that "operating expenses" should be paid; these were defined by the contract as being "the cost of producing the oil from the property including salaries and wages of men actually employed on leases, other than administrative and/or executive salaries of Fulton Oil Company and/or Rice Oil Company * * *, supplies other than permanent improvements, insurance and other Federal, State or County taxes and/or assessments, which would or may be a charge against Marine Corporation by reason of its ownership of such property." The proceeds derived from the sale of all net oil was to be applied by these companies upon the purchase price remaining due them from the Marine Corporation. The reservation of the oil and the possessory rights to the properties in question were to remain in the Rice Oil Company and Fulton Oil

Company until such time as the balance of the purchase price was fully paid, or until such time as these companies should in their judgment determine that the properties could not be made to produce oil in paying quantities, whereupon all reservations and possessory rights of the Rice Oil Company and the Fulton Oil Company in the properties ceased.

In 1931, appellee, Atlas Assurance Company, Ltd., issued and delivered a policy of insurance in which W. E. Rice was the named insured. The circumstances which led up to the issuance of this policy, as narrated by the witness, Ray A. Klugh, the manager for appellants, and which are not contradicted, are as follows: "In 1931 insurance was taken out by Rice Oil Company and Fulton Oil Company through the Moon Agency to protect the interests of Rice Oil Company and Fulton Oil Company in the property of which they had possession under the contract with Marine Corporation. In 1931 I called Moon Agency on the phone and told them of our intention to cover the interests of our various companies. In a day or so the representative of Moon Agency called at the office and I advised him of the property to be covered. The agent suggested that the insurance be a blanket policy issued in the name of W. E. Rice. I advised him that Rice Oil Company and Fulton Oil Company had an interest in this property and had possession of the property and that we wanted insurance to protect their interest. Beyond this, no formal application was made for insurance in 1931, and no inquiry was made by Moon Agency as to the title or ownership of this property, nor did I make any representation or statement as to how the property was held or owned."

It appears that the insurance agent was also informed that the property insured was located on leased premises. In that regard the witness Klugh testified: "I believe I told him that it was the Fulton property on the Fulton-Byrne lease, Rice Stannard, State lease, the Rice lease and Rice Securities, and W. E. Rice-Bluhm lease. That is the way we always designated the leases as I stated to that answer."

Subsequently, a renewal policy, dated March 25, 1933, was issued which was delivered on April 12, 1933. Prior to the issuance and delivery of this second policy, the property described in the first policy was checked over by the agent for appellee and the agent for appellants to determine if the amount of insurance they had been carrying was sufficient. At that time the property which is alleged in the complaint herein as having been destroyed by fire was examined and it was intended that it should be covered by the policy of insurance thereafter to be issued.

This second policy of fire insurance which was issued on March 25, 1933 was again issued in the name of plaintiff, W. E. Rice, alone. In the first policy the property later destroyed by fire was specifically described. It was the intention of the agents, both of appellants and appellee, that the same property should be insured in the second policy and the items had been specifically checked and valued by the agent of appellee. In the second policy none of the property insured was listed or described as in the first policy for the reason that the agents in the insurance office representing appellee had worked out what they called a "rider" to cover this class of property a copy of which is attached to the face of the body of the policy marked "Oil Lease Property Form," and which reads as follows:

"$33,100.00 (except as hereinafter excluded) on all Buildings, Structures, Tanks, Equipment and Contents therein, including all property on which liability is required to be specifically assumed by the condition of this policy, all while upon the premises, at locations as specified above, all comprising and/or appertaining to the operation of oil and gas well properties and situate on land owned and/or leased and/or occupied by the insured.

"The terms 'Buildings, Structures, Tanks, Equipment and Contents therein' shall include all property (excepting as hereinafter excluded) subject to loss or damage by fire or lightning, and, provided the insured is legally liable therefor, property described in this policy held by them in trust, or on commission, or sold but not removed, all while anywhere upon the premises described or within 100 feet thereof."

The evidence shows that this form was gotten up by the agents for appellee as stated by witness Silvernale, who was the agent of appellee who checked over the property with Mr. Klugh, appellants' agent, at the time the property was reinsured, and who, in relation to this rider, testified as follows:

"Q. Now, with regard to this portion attached here, marked 'Oil Lease Property

Form,' can you tell us how that came to be attached? A. Yes; through our experience in the oilfield business, in writing leased properties, we discussed it many times in the office, we used this form because we figured it would give our assured very broad coverage, and if anything ever came up on a loss there would be no dispute over it, over such loss, regardless of who owned the property or whose property it was."

As to what the policy would cover the witness further stated: "The only statement I made to Mr. Klugh as to what the insurance policy would cover was that it would cover all of his leases blanket, that all of his property, or the W. E. Rice Company would be covered, or W. E. Rice."

Under these representations and with such understanding, the new policy was issued in the name of W. E. Rice. The policy was delivered on April 12, 1933, and on the next day certain property and certain oil in storage was destroyed by fire. The property destroyed, for which recovery is here sought, was in the possession of Rice Oil Company and Fulton Oil Company by virtue of the leases and of the contract with the Marine Corporation heretofore outlined.

Proof of loss in due form was made to appellee by W. E. Rice, Rice Oil Company and Fulton Oil Company upon the basis that the policy issued in the name of W. E. Rice was likewise intended to insure the interests of the other two plaintiff corporations. Thereupon it was agreed between the parties here that the total loss for which appellee could be liable amounted to $7,329.63, allocated as follows: $1,284.52, for all the oil destroyed; $6,045.11, for all of the other property destroyed. After these figures were agreed upon appellee denied liability under the policy. A suit in equity was brought by appellants in the State Court to reform the insurance policy so as to name as the insured therein Rice Oil Company and Fulton Oil Company as their respective interests shall appear, and a judgment was prayed for the full amount, $7,329.63, to indemnify for loss on the property destroyed by the fire. The case having been removed by appellee from the State Court to the Federal Court for the District of Montana, appellants filed a complaint at law setting up the same facts. Appellee made answer in both cases denying any liability whatever under the policy. The cases were consolidated and tried before the District Judge sitting without a jury pursuant to a written stipulation. At the trial appellee admitted liability for all the oil destroyed but denied any liability as to the other property.

The court adopted and filed findings of fact and conclusions of law and awarded judgment against appellee for the oil destroyed in the amount of $1,284.52, with interest at 6% per annum from August 9, 1933, and costs. The court refused to allow recovery for the additional sum of $6,045.11 claimed for the property destroyed in addition to the oil, which property was held and in possession of appellants under and by virtue of their contract with the Marine Corporation and which property had been sold to the Marine Corporation but not delivered.

The present appeals are based upon the contention of appellants that in addition to the sum awarded for the oil destroyed they are likewise entitled to recover the additional sum for the other property also insured and which was destroyed by the same fire.

The findings of fact as made by the Court were in the main as presented by the respective parties. In the brief for appellee, and in the argument made in its behalf before this court, it is urged that the findings of fact are inconsistent and that wherever this occurs the findings for appellee must be accepted.

The findings indicate no real inconsistency. What the lower court did was to conclude as a matter of law that the rider attached to the policy was limited by the general exceptions contained in the fine print embodied in the policy, one of which was to the effect that the policy required sole and unconditional ownership of the property to be in the insured in order to entitle them to recover, and further, the court also held that under a narrow construction of the rider any recovery on the demand in suit was limited to such property only for which the insured were legally liable and that the interest of appellants was insufficient.

Omitting two findings hereafter discussed at length, the pertinent findings of fact as entered by the court are as follows:

"That defendant, Atlas Assurance Company, Ltd., through its agent Moon Agency, made, executed and delivered to Ray A. Klugh for W. E. Rice, Rice Oil Company and Fulton Oil Company its policy of insurance in writing."

"That Rice Oil Company and Fulton Oil Company took out insurance through Moon Agency to protect their interests in the property held and possessed by them under the contract with Marine Corporation, and that the first insurance so taken out was taken out in 1931."

"That in 1931 said Ray A. Klugh advised Moon Agency that it was the intention of plaintiffs to cover the interests of the various W. E. Rice Companies by the proposed insurance, and advised Moon Agency as to what property was to be covered, and that Rice Oil Company and Fulton Oil Company had an interest in the property and had possession of the property and wanted insurance to protect their interests."

"That Roger F. Silvernale is, and since 1930 has been, employed by Moon Agency as a solicitor and agent with the same powers and authority as to assuming risks and writing policies as Ben R. Comings, the managing agent of Moon Agency."

"That prior to the issuance of the policy involved in this action, and on or about March 1, 1933, said Roger F. Silvernale, representing said Moon Agency and said defendant, Atlas Assurance Company, Ltd., and said Ray A. Klugh, representing said plaintiffs, W. E. Rice, Rice Oil Company and Fulton Oil Company, checked over and discussed the property and equipment to be insured and the values thereof with regard to a renewal of the insurance thereon. That at the time of said discussion the property set forth in Paragraph 28 hereof, a list of which was set forth in the pleadings and which property comprised the property destroyed by the fire, was specifically included and discussed as a subject of the insurance. That at the time of said discussion no inquiry was made by said Roger F. Silvernale with regard to the title or ownership of the property by the companies to be insured, nor was any statement made by said Ray A. Klugh regarding title or ownership of the property, nor was any formal application for said insurance made by said Ray A. Klugh or plaintiffs."

"That all of the property destroyed by the fire was in the possession of Rice Oil Company, Fulton Oil Company or W. E. Rice."

"That in 1926 said Roger F. Silvernale had read in the newspapers of the sale by plaintiffs to Marine Corporation and of said contract between Rice Oil Company and Fulton Oil Company and Marine Corporation previously referred to, and that at the time of his said discussion with said Ray A. Klugh, as previously herein set forth, and at the time of the delivery of said policy, as previously herein set forth, said Roger F. Silvernale had the knowledge he had in 1926."

"That said rider attached to said insurance policy and labeled 'Oil Lease Property Form' was so attached to said policy as delivered and so used by said Moon Agency and said defendant for the purpose of so insuring and covering the assured that in case of any loss no dispute could arise as to the question of the ownership or title to the property insured."

"That said rider attached to said insurance policy was understood by said Roger F. Silvernale and said Moon Agency and said defendant to insure the assured with regard to the property in said policy irrespective of the title or ownership of assured in or to said property."

"That said Ray A. Klugh and said plaintiffs, and said Roger F. Silvernale and said defendant intended and agreed that all of the property which was destroyed by said fire as hereinafter set forth should be covered by said policy of insurance as delivered."

"That all of the property destroyed by fire was (with the exception of the oil destroyed) possessed and held by Rice Oil Company and Fulton Oil Company under and by virtue of said contract with Marine Corporation, which said contract is set forth as Exhibit '2' to plaintiff's Amended Bill in Equity and Amended Complaint at Law respectively."

"That immediately after the fire of April 13, 1933, Rice Oil Company and Fulton Oil Company replaced and restored the said property thereby destroyed (with the exception of the oil destroyed), and that the property so destroyed and so replaced was necessary and essential for the development and operation of the premises for oil and gas and to the operations of Rice Oil Company and Fulton Oil Company."

"That defendant agreed with plaintiffs upon the property destroyed, and its actual value, at the time of its destruction, and the amount which could be claimed therefor if defendant were liable therefor, which amount was the sum of Seven Thousand Three Hundred Twenty-nine and 63/100 Dollars ($7,329.63), divided as follows: $1,284.52 for said 3,320 barrels of oil destroy-

ed, and $6,045.11 for said other property destroyed."

"That after the fire in question, the full premium of $827.50 called for by said insurance policy was paid by Rice Oil Company and Fulton Oil Company to said Moon Agency and defendant."

"That said contract of Marine Corporation, with the plaintiffs in this case, at the time the policy was written which is involved in his action, was recorded in the records of the County Clerk and Recorder of Toole County, Book 18 of Oil and Gas Assignments on page 433."

"That under the terms of said policy of insurance, defendant, Atlas Assurance Company, Ltd., intended to insure not only W. E. Rice, but also Rice Oil Company and Fulton Oil Company, the same to all intents and purposes as if they had been named insured in said policy along with W. E. Rice, the named insured therein."

"That on or about March 25, 1933, and for many years prior thereto, operations and developments conducted by Rice Oil Company and Fulton Oil Company were generally known and referred to as operations and developments of W. E. Rice."

"That the renewal policy contained a rider attached to it providing for blanket insurance and covering property situate on four or five oil leases held by plaintiffs, subject to the provisions of the policy."

"That there were no discussions or representations as to title or ownership of any property on these leases between plaintiff and defendant at any time subsequent to the delivery of the first policy in 1931."

"That the rider attached to the policy dated March 25, 1933, provides in part as follows:

" '$33,100.00 (except as hereinafter excluded) on all Buildings, Structures, Tanks, Equipment and Contents therein, including all property on which liability is required to be specifically assumed by the conditions of this policy, all while upon the premises, at locations as specified above, all comprising and/or appertaining to the operation of oil and gas well properties and situate on land owned and/or leases and/or occupied by the insured.

" 'The terms "Buildings, Structures, Tanks, Equipment and Contents therein" shall include all property (excepting as hereinafter excluded), subject to loss or damage by fire or lightning, and, provided the insured is legally liable therefor, prop-

erty described in this policy held by them in trust, or on commission, or sold but not removed, all while anywhere upon the premises described or within 100 feet thereof.

" 'The validity of this policy shall not be affected if there is a lien, mortgage or bonded indebtedness or if the property is situate on leased ground.' "

"That the policy dated March 25, 1933, provides in part as follows:

" 'This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than ten o'clock or if it cease to be operated for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership;' "

"That with the exception of the oil destroyed by fire, all the property destroyed by the fire was owned by Marine Corporation, and plaintiffs were not legally liable to Marine Corporation therefor."

Briefly summarized, the court found that appellee, Atlas Assurance Company, Ltd., through its agent Moon Agency, made, executed and delivered, to Ray A. Klugh, manager for appellants, its policy of insurance in writing; that the insurance was first taken out by appellants to protect their interests in the property held and possessed by them under their contract with Marine Corporation and the first policy of insurance was issued in 1931. At that time Manager Klugh advised Moon Agency that it was the intention of appellants to cover the interests of the various W. E. Rice Companies by the proposed insurance and the property to be covered was listed and the Agency was advised that Rice Oil Company and Fulton Oil Company had an interest in, and possession of, the property and desired this insurance to protect their interests. The managing agent of the Moon Agency suggested that insurance be written in the name of W. E. Rice alone.

No formal application for such insurance was made and no representation as to the title of the property was made by said Manager Klugh to said Moon Agency in 1931 and no inquiry concerning title or ownership was made by said agency.

The court further found that on or about March 1, 1933, Agent Silvernale, representing said Moon Agency and appellee, with the same powers and authority of assuming risks and writing policies of a managing agent for appellee, met with appellants' manager Klugh relative to the renewal of insurance on the property here in question. Together they checked over and discussed the property and equipment to be insured and the values thereof. At the time of said discussion the property held by appellants under the contract with the Marine Corporation and which property comprised the property destroyed by the fire was specifically included and discussed as a subject of the insurance. Again, no formal written application for said insurance was made and there was no discussion or inquiry made by the insurance agent nor any representation or statement made by the manager other than he stated to appellee's agent that he wanted the interests of appellants in the property insured. Titles were not discussed. The rider shows it was to cover property leased or occupied by insured or "held by them in trust, or on commission, or sold but not removed, all while anywhere upon the premises described * * *."

We have here a policy of insurance which concededly does not express the intention of the parties. It was issued in the name of a single individual while by the admission of the appellee the interests of other parties were to be included under its terms. In this policy there was no particular description of the property insured, the same being obviated by the insertion in the policy of a rider which was represented by the authorized agent of the insurance company would cover the interests in the property and the parties intended to be insured, but which conflicts with certain printed provisions on the back thereof.

The entire evidence in the case clearly establishes that there was no fraud practiced with relation to the ownership of the property; that the policy was written in the name of W. E. Rice at the suggestion of appellee's agent. It further appears from the evidence that the fact that the Marine Corporation had acquired the title to this property was of considerable notoriety in the community; not only was the contract recorded in the office of the county clerk and recorder at the time, but it had been given publicity in the local press and the agent who prepared the rider for the second policy admitted that he had read the announcement of the sale in the papers; that when he discussed the different properties that were insured and placed valuations thereon he made no inquiry as to the title or ownership of the property nor did Mr. Klugh make any statement or representation of any sort with regard to the title or ownership thereof and that he stated to Mr. Klugh that the insurance policy "would cover all of his leases blanket, * * *."

The proper interpretation of the evidence as gleaned from all the testimony is correctly and fully expressed in the following excerpt from the finding of the court: "That in 1931 said Ray A. Klugh advised Moon Agency that it was the intention of plaintiffs to cover the interests of the various W. E. Rice Companies by the proposed insurance, and advised Moon Agency as to what property was to be covered, and that Rice Oil Company and Fulton Oil Company had an interest in the property and had possession of the property and wanted insurance to protect their interests."

It was unequivocally understood that the insurance would protect the interests of Rice Oil Company and Fulton Oil Company. The evidence as to this is clear and convincing and not disputed. What has been referred to as a renewal policy was in fact a new and different policy. In the first policy the property had been described in separate items. In the last policy all descriptions were purposely omitted and a rider was substituted which referred to the property in general terms. When this second policy was discussed before its issuance, appellee's agent represented to appellants' agent that the insurance policy "* * * would cover * * * all of his property, * * *.", as heretofore pointed out.

Appellee, at the trial, admitted that it was the intention to insure not only W. E. Rice, but also the Rice Oil Co. and the Fulton Oil Co., and in effect consented to the reformation of contract to include these two companies as insured. In pursuance of this condition they paid the losses sustained by the Rice Oil Company and the

Fulton Oil Company by reason of the destruction of oil belonging to them, although they were not named in the policy. The contention of the appellee is set out in the Fourth subdivision of the answer to plaintiffs' amended complaint: " * * * but defendant alleges that it intended to thereby insure only the property described in the policy of which W. E. Rice, Rice Oil Company or Fulton Oil Company were the unconditional and sole owners."

It is admitted by the answer that all the property destroyed by fire was in possession of the Rice Oil Company, Fulton Oil Company or W. E. Rice, by virtue of the contract of sale to the Marine Corporation; that the property was necessary and essential for the development of the operation of the leases and that the property was replaced by the Rice Oil Company and the Fulton Oil Company.

The contention of the appellee is that the clause of the contract providing that the policy should be void "if the interest of the insured be other than unconditional and sole ownership" in effect invalidates the contract. It is alleged in the answer that "at the time said policy was made, issued and delivered and at all times subsequent thereto," the Marine Corporation was the owner of the property destroyed by fire.

Thus appellee, to defeat recovery, relies upon a general clause usually found printed in the current standard forms of insurance policy, which in the instant case is worded as follows: "The entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if * * * the interest of the insured be other than unconditional and sole ownership;".

In support of its contention the case of Libby Lumber Co. v. Pacific States Fire Ins. Co., 79 Mont. 166, 255 P. 340, 343, 60 A.L.R. 1, is cited. This decision contains language drawn from 26 C.J. p. 170, 171, as follows: " 'Where such conditions are contained in the policy, and there is no statement of the title or specific interest an acceptance of the policy amounts to a representation by insured that his title or interest is that stated in the condition, and if his title or interest is substantially different, the insurance is voided.' "

We would feel bound to follow this opinion from the Montana Supreme Court if the facts in the case before us were not so unlike as to make the question here to be decided quite different.

In the Libby case the Insurance Company was given no information as to the status of the title of the property insured. Here, the very rider endorsed on the policy discloses that the property insured is variously, leased property, property held in trust, property sold but not delivered, and property occupied by the insured.

In the Libby case the agent for the insured did not suggest, as here, that the policy be written in the name of one known not to have the "unconditional and sole ownership" of the property.

In the Libby case the agent for the Insurance Company did not represent that the rider would cover the property and "that in case of any loss no dispute could arise as to the question of the ownership or title to the property insured."

In the Libby case the court found not only that plaintiff was not the unconditional and sole owner of the property at the time the rider to the policy was executed but also that the corporation had no insurable interest whatever in the property. The court said, 79 Mont. 166, 255 P. at page 345: " * * * the plaintiff cannot recover, as it was not possessed of an insurable interest in the property at the time of the execution of the rider to the policy or at the time of the fire loss."

And again the opinion said, 79 Mont. 166, 255 P. at page 342: "Hence it not only was not the sole and unconditional owner of the property, but it did not have an insurable interest therein."

The holding of the Libby case amounts to nothing more than this—where the policy provides that it will be void unless the insured is the unconditional and sole owner and there is nothing in the policy to modify this general clause or anything except the policy itself, then the acceptance of the policy implies a representation of such ownership. Where, however, the Insurance Company has knowledge of the fact that the title of the insured is not sole and unconditional ownership, the other principles announced in the decisions of Montana apply, that where the Insurance Company knows at the time the policy is issued that it would be void and of no effect, the issuance of the policy is per se a waiver of the condition.

In this connection it should be remembered that neither the title of Rice nor of either of the two companies, involved, the Rice Oil Company, or the Fulton Oil Company, was sole and unconditional own-

ership. The property was erected upon leased premises, known so to be by the Insurance Company, and recognized by the terms of the policy itself. The rider relates to "Oil lease property form." It insured the property "while upon the premises, * * * appertaining to the operation of oil and gas well properties and situate on land owned and/or leased and/or occupied by the insured." It is provided that "The terms 'Buildings, Structures, Tanks,'" etc., "shall include all property (excepting as hereinafter excluded), subject to loss or damage by fire or lightning, and, provided the insured is legally liable therefor, property described in this policy held by them in trust, or on commission, or sold but not removed, all while anywhere upon the premises described or within 100 feet thereof."

The trial court held that the property having been sold by the insured to the Marine Corporation, it was not "legally liable therefor" and, consequently, the rider did not cover the property. It is certainly true that the property was located on land occupied by the insured and thus came within the express terms of the rider. Although the rider is to be construed as part of the policy the fact that it is attached to a printed form of general use and is intended to apply more specifically to the condition of the parties named in the policy, gives the rider a predominating influence in determining the meaning and intent of the policy.

Moreover, the appellee disregards as of no effect the opening words of the paragraph containing the limitation which it here seeks to invoke. This clearly appears from the words used, "The entire policy, *unless otherwise provided by agreement endorsed hereon or added hereto,* shall be void if * * * the interest of the insured be other than unconditional and sole ownership;". The words italicized should set at rest all doubts on this subject because the rider which has been discussed at length was endorsed upon the policy which conforms to the proviso and thereby eliminates the "unconditional and sole ownership" requirement.

The intention of the parties with reference to the rider is correctly stated in the findings of the court as follows:

"That said rider attached to said insurance policy and labeled 'Oil Lease Property Form' was so attached to said policy as delivered and so used by said Moon Agency and said defendant for the purpose of so insuring and covering the assured that in case of any loss no dispute could arise as to the question of the ownership or title to the property insured."

"That said rider attached to said insurance policy was understood by said Roger F. Silvernale and said Moon Agency and said defendant to insure the assured with regard to the property in said policy described irrespective of the title or ownership of assured in or to said property."

In the case of Krpan v. Central Federal Fire Ins. Co., 87 Mont. 345, 287 P. 217, at page 218, the Supreme Court of Montana said: "It has generally been held that, where the agent of the insurance company, at the time of issuing the policy, knows facts which by the terms of the policy render it void, the insurance company by issuing the policy and accepting the premium waives such provision in the policy, or, as some courts hold, is estopped from asserting nonliability under such circumstances."

And to the same effect is 14 R.C.L. § 346, p. 1166: "The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."

The printed clause as to "unconditional and sole ownership" was expressly waived by the fact that the agent of the appellee advised appellants to have the policy issued in the name of W. E. Rice alone. This was after he had been informed and knew that W. E. Rice was not the sole owner of the property and the policy was issued in that name it being intended and agreed that it should cover the interests of Rice Oil Company and Fulton Oil Company.

This view finds support in the following finding of the court: "That under the terms of said policy of insurance, defendant, Atlas Assurance Company, Ltd., intended to insure not only W. E. Rice, but also Rice Oil Company and Fulton Oil Company, the same to all intents and purposes

as if they had been named insured in said policy along with W. E. Rice, the named insured therein."

■ If this policy was void because the interest of the insured was "other than unconditional and sole ownership," then it might be asked was it ever in force at all?

"Where a policy is expressly conditioned that it shall be null and void if the interest of the insured be other than unconditional and sole ownership, the required title is a condition precedent to the policy becoming effective." 4 Couch on Insurance, Sec. 915, p. 3182.

If this be so, then the appellee who sent its agent to examine the property insured in contemplation of effecting such insurance, and pretended to insure the same, and received as consideration for such insurance a very substantial sum of money, delivered to the insured a policy which was void when it was issued, and no liability of appellee went with it at all. In the case of Wright v. Fire Ins. Co. of London, 12 Mont. 474, 31 P. 87, 19 L.R.A. 211, involving a similar situation, the Supreme Court of Montana had this to say, 12 Mont. 474, 31 P. at page 91: "In such case, that construction of the transaction would imply a scheme to obtain the consideration, and if the assured happened not to observe such condition, making the policy void, and no loss occurred, the consideration would be acquired without giving any risk. On the other hand, if a loss occurred, the policy could be repudiated as void, and thus get the consideration and escape liability."

■ If the rider is not concededly a waiver of unconditional ownership then the meaning is altogether doubtful.

"* * * when the meaning is in doubt, the contract must be construed in the sense in which the insurer believed, at the time of making it, that the insured understood it, or, in the sense in which the insured understood it and the insurer intended he should understand it, * * *." 1 Couch on Insurance, Sec. 173, p. 353.

In the case of Montana Auto Finance Corp. v. British & Fed. Fire Underwriters, 72 Mont. 69, 232 P. 198, at page 200, 36 A.L.R. 1495, the Supreme Court of Montana stated: "It is a matter of common knowledge that insurance companies prepare their own contracts of insurance. The language of the policy is their language. They do not permit the insured to have a voice in the drawing of his own contract; nor does he negotiate with reference to its terms in the sense that negotiations are carried on before agreements are reached in ordinary contracts. Joyce on Insurance, p. 594. Policies of insurance are invariably complex and are understood by laymen with difficulty, and as a result the insured generally makes a request for the kind of insurance he desires and then signs 'on the dotted line' upon a formidable appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. The policies are prepared by skilled lawyers retained by the insurance companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself. Because of reasons such as these, whenever the contract of insurance is so drawn as to be ambiguous, uncertain, and to require construction, the courts of this country resolve the doubt in favor of the insured and against the insurer, in accordance with the rule contra proferentem. Joyce on Insurance, par. 222; 32 C.J. 1156."

In a later case, Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 261 P. 880, 883, 884, the Supreme Court of Montana again stated: "It should be borne in mind that it is a cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. 32 C. J. 1152. Whenever a contract of insurance is so drawn as to be ambiguous or uncertain, and to require construction, and the contract is fairly susceptible of two constructions, one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted. Montana Auto Finance Corp. v. British & Federal Fire Underwriters, 72 Mont. 69, 232 P. 198, 36 A.L.R. 1495; McAuley v. Casualty Co., 39 Mont. 185, 102 P. 586."

■ When the description of the property was omitted in the renewal policy and the rider substituted therefor it was the undoubted understanding of all the parties as expressed by the agent, "* * * we figured it would give our assured very broad coverage, and if anything ever came up on a loss there would be no dispute over

it, over such loss, regardless of who owned the property or whose property it was."

"However, the meaning of an insurance contract may be measured by the conduct of all the parties thereto, if the terms of the contract, when reasonably construed, are in harmony with that conduct, since, where the parties have themselves placed a construction on certain provisions of the contract, and the same is neither in conflict with any language therein, nor violative of statute, regulation, or public policy, the courts will adopt such construction. And when the parties to an ambiguous insurance contract, by their own acts, place a construction upon it, that construction is the best evidence of what the contract was actually intended to mean." 1 Couch on Insurance, Sec. 173, p. 351.

" * * * the parties must be presumed to have intended the one to insure, and the other to obtain insurance on, the subject-matter of the contract as it necessarily was at the time, and must continue to be during the life of the policy. And, as within the above rules, it may be added that the terms and conditions of a policy should be construed, if possible, so as to give them a meaning reasonably applicable to the kind of insurance upon the particular species of property or risk insured, having in view the purposes for which it is ordinarily used and the manner in which it is usually kept." 1 Couch on Insurance, Sec. 174, p. 355.

Particularly referring to contracts of insurance, the Supreme Court of Montana in the case of Holter Lumber Co. v. Fireman's Fund Ins. Co., 18 Mont. 282, 45 P. 207, at page 209, laid down this rule: "Such contracts having for their object indemnity, the rule is that they are to be construed liberally to carry out such objects. 'No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance was his object to insure.' May, Ins. § 175. It is also an established principle in the construction of fire insurance policies, as well as other contracts, that the words of the agreement are to be applied to the subject-matter about which the parties are contracting at the time, the presumption being that such matter is in the minds of the parties at the

time of their agreement. Wood, Ins. p. 145."

Section 7527 of the Revised Codes of Montana, 1935, Vol. 3, p. 772, states: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

The second paragraph of the rider attached to the face of the policy makes broad provision for the coverage of property in addition to that set forth in paragraph one of the rider. It reads to-wit: "The terms 'Buildings, Structures, Tanks, Equipment and contents therein' shall include all property (except as hereinafter excluded), subject to loss or damage by fire or lightning, and, provided the insured is legally liable therefor, property described in this policy held by them in trust, or on commission, or sold but not removed, all while anywhere upon the premises described or within 100 feet thereof."

In the outset of this discussion it should be noted that the phrase in parenthesis "excepting as hereinafter excluded" does not have reference to the general printed provision concerning "unconditional and sole ownership," but refers to a specific paragraph in the rider designated "Exclusions" wherein is described the property to be excluded such as, "accounts, bills, currency, deeds," etc.

In one of its findings the court said: "That with the exception of the oil destroyed by fire, all the property destroyed by the fire was owned by Marine Corporation, and plaintiffs were not legally liable to Marine Corporation therefor."

This so called finding of fact is also relied upon by appellee to sustain the decree herein. This statement, perhaps, is a conclusion of law rather than a finding of fact. In any event, under the evidence in this case, the finding or conclusion that appellants "were not legally liable" for the property destroyed under the circumstances presented in this case is untenable.

We hold that the first paragraph of the rider hereinbefore discussed which by its terms "Buildings, Structures, Tanks," etc., exactly covers the property destroyed by the fire, is not restricted by this second paragraph now considered. However, we will examine the contention made by appellee. It is argued that since the property had been sold in no event would the insurance company be liable under the policy

unless appellants held the property in trust or had retained possession under circumstances which made them liable for its destruction. It must be admitted that the property in question was held by appellants either "in trust," or was "sold but not removed," or it was occupied and in their possession under some sort of bailment.

As heretofore pointed out, the rider on the face of the policy covers property held in trust or on commission. It was thus intended to cover property belonging to persons other than the insured. Where persons engaged in business are in possession of property for others on account of which they may be liable, such property may be insured under policies covering goods held by them "in trust;" but this term does not imply a technical trust, but only possession of property of others for which the insured may be called on to account. 26 C.J. § 82, p. 85.

It might well be contended that the term "in trust" was sufficient under the circumstances that here appear to cover the property owned by the Marine Corporation but held in the possession of appellants for the joint benefit of themselves and the corporation. As testified to by appellee's agent the rider to this policy was designed "to give our assured very broad coverage."

"According to some very broad conceptions of the meaning of the term 'trust' every bailment is a trust. In a commercial or mercantile, as opposed to a technical, sense, bailed property is often regarded as property held 'in trust,' * * *." 6 Am.Jur., Bailments, § 57, p. 184; Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868.

Such is the meaning generally given to these words in the insurance business and insurance law. Exton & Co. v. Home F. & M. Ins. Co., 249 N.Y. 258, 164 N.E. 43, 61 A.L.R. 718.

The record does not disclose that the property in question was real property. On the contrary, both parties assume that it was personal property. While it might not be altogether precise to classify the possession of this property that was insured and destroyed as a bailment the form and method of its use and possession by appellants and their responsibility in relation thereto approximates very closely that of bailment. The Marine Company had the ultimate title but appellants had the occupancy and use for a particular purpose expressed in the agreement of sale with the obligation to deliver it to the Marine Company when that purpose had been fulfilled. Appellee has cited cases and argued principles arising out of bailments.

To support the finding of the court, appellee relies on the case of Brown, Inc., v. Fuller & Co., 28 Cal.App. 676, 153 P. 960. In that case defendant chartered plaintiff's steamer agreeing to return the vessel in the same condition that it was at the time of the charter, except wear and tear, and the vessel was wrecked without the fault of the defendant. The court there said that the stipulation that the appellant should return the steamer in good condition, less wear and tear, was merely the expression of what the law would have implied in its absence, and on the facts disclosed that a mere promise to return the thing hired in good condition less wear and tear does not import a contract to insure it against inevitable casualties or losses occurring without fault on his part.

An authority much more in point is the case of Ocean Accident & Guarantee Corporation, Ltd., v. Old Nat. Bank, 6 Cir., 4 F.2d 753, where the court says on page 755: "Another contention of the company is that the bank has not sustained a recoverable loss, because it voluntarily paid to the owners of the bills of lading the value thereof, without an adjudication of its liability—such an adjudication being, as it contends, a prerequisite to the bank's right to recover on the policy. Disregarding the provision which imposes liability for loss of property 'in which the insured has a pecuniary interest,' the pertinency of which we do not decide, the question turns on the clause 'for which it is legally liable,' qualifying, as we construe it, the property described. The clause obviously refers to property of others in the custody of the bank. Interpreting this clause more strongly against the insurer, as authorized in Liverpool & London & Globe Insurance Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460, and considering it in conjunction with the requirements of the policy as to giving notice, making proofs of loss within 90 days, and bringing suit within one year, compliance with which was necessary to protect the indemnity, it seems certain that the words refer to a condition in which the insured would be subjected to claims or demands and out of which a legal liability might arise, and not

574

to an adjudged liability. Home Insurance Co. v. Peoria & Pekin Union Ry. Co., 178 Ill. 64, 52 N.E. 862."

The contract between the Rice and Fulton Companies and Marine, provided that the former " * * *. will use their best efforts and endeavors to produce from said property the maximum amount of oil and will in such respect manage and superintend said property in the same manner as though they owned said property, using all possible skill and the most approved methods known to the oil industry, to secure the results above set forth at the minimum cost."

It also provided that " * * * Net oil, as used herein, is hereby defined to mean all oil produced and saved from all or any of the * * * real property, save and excepting * * * sufficient of the remaining oil after deducting all royalties, the sale of which and proceeds derived therefrom will pay the operating expenses of the property. Operating expenses are hereby defined as the cost of producing the oil from the property, including * * * insurance * * *."

While the contract does not in express terms declare that appellants shall keep the property insured, it plainly does so by implication. It provides for the payment of operating expenses and therein specifically declares that the cost of insurance is an operating expense. This alone makes the authority relied on by appellee inapplicable here. But, even if the language relating to insurance were not in the contract, the evidence as to the conduct of the parties with relation to the property would be sufficient to make appellants liable therefor had they failed to take out this insurance.

"Where the bailee has undertaken, either expressly or through an established course of dealing to insure the property, he is presumptively required to insure it for its full value." 8 C.J.S., Bailments, § 23, p. 257.

The evidence here shows that the appellants had undertaken to insure the property through a course of years which thus would bring them within the liability contemplated by the law.

As a general rule a person accepting the responsibility of such a position is charged with the exercise of the business acumen and active business ability that an ordinary man would exercise in the transaction of his own affairs. It is his duty to take steps reasonably necessary to protect the property submitted to his care and use. Thus here, even if the language relating to insurance had not been inserted in the contract, the standard of conduct as evidenced by appellants' actual performance with relation to this property would be sufficient to make them liable therefor had they failed to take out this insurance.

In cases of mutual bailment "ordinary care means that degree of care, attention, or exertion, which, under the actual circumstances, a man of reasonable prudence and discretion would use in reference to the particular thing if it were his own property," and failure to do so would render him liable. Fidelity Storage Co. v. Foster, 60 App.D.C. 277, 51 F.2d 439, 440. See, also, 6 Am.Jur., Bailments, § 249, p. 336; 8 C.J.S., Bailments, § 27, p. 270.

The very conduct of appellants here, evidences that in their estimation reasonable prudence required that the property should be kept insured and the event proves the correctness of that judgment. So, under the facts as disclosed by the evidence, it was not only the right of appellants to secure insurance to cover this property against loss, but it was their duty so to do else they would have been liable for their failure.

The evidence shows, indeed, appellee's brief concedes, that this reserved possession and use of the entire property until full payment therefor was made or until the operation of the property ceased to be profitable was of greater value to the insured than to the Marine Corporation. Also, that the buildings destroyed which were insured were so necessary to the use and operation of the property by appellants that other similar structures were immediately erected to replace them. In this connection the court found: "That immediately after the fire of April 13, 1933, Rice Oil Company and Fulton Oil Company replaced and restored the said property thereby destroyed (with the exception of the oil destroyed), and that the property so destroyed and so replaced was necessary and essential for the development and operation of the premises for oil and gas and to the operations of Rice Oil Company and Fulton Oil Company."

These operations were required by the contract with the Marine Corporation.

The Montana statute seems to cover the situation here: "Any interest in prop-

erty, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." Sec. 8070, Revised Codes of Montana, 1935, Vol. 3, p. 916.

 Furthermore, the appellants undoubtedly had an insurable interest in the property and the policy was intended to and did cover such interest. In this regard the court found that the agent of appellants advised the agent of appellee that it was the intention of appellants to cover the interests of the various W. E. Rice Companies by the proposed insurance, and advised the insurance agency "as to what property was to be covered, and that Rice Oil Company and Fulton Oil Company had an interest in the property and had possession of the property and wanted insurance to protect their interests."

If the policy covers the property destroyed, and we hold it does, the only remaining question is whether or not the insured had an insurable interest therein. The fact that they were using the property and were required to replace it in order to continue operations, not only shows an insurable interest but that the interest extends to the full value of the property.

In this connection the court found that the respective representatives of appellants and appellee "intended and agreed that all of the property which was destroyed by said fire as hereinafter set forth should be covered by said policy of insurance as delivered."

 "The term 'interest' as used in the phrase 'insurable interest' is not limited to property or ownership in the subject matter of the insurance. Where the interest of the insured in, or his relation to, the property is such that he will be benefited by its continued existence or suffer a direct pecuniary injury by its loss, his contract of insurance will be upheld, although he has no legal or equitable title." 26 C.J. sec. 3, p. 20.

 One who owns or has a right or interest in a building whether such building is situated on his own land or on the land of another has an insurable interest therein. One in the lawful possession of property, having equitable rights therein has an insurable interest. 26 C.J. sec. 4, p. 24.

"A right of property in a thing is not always indispensable to an insurable interest. Injury from its loss or benefit from its preservation to accrue to the assured may be sufficient, and a contingent interest thus arising may be made the subject of a policy." Hooper v. Robinson, 98 U.S. 528, 538, 25 L.Ed. 219.

"In fact, any person has an insurable interest in property who derives a pecuniary benefit from its existence, or would suffer loss from its destruction, and this, whether he has, or has not, any title in, or lien upon, or possession of the property itself. And any interest in property, legal or equitable, qualified or absolute, will, as a general rule, support a contract of insurance thereon, since if such a relation exists between the insured and the property that injury to it will, in natural consequence, result in loss to him, he has an insurable interest, as has the holder of an interest in property by the loss of which he is deprived of its possession, enjoyment, or profit, or a security or a lien resting thereon, or other certain benefits growing out of or dependent upon it." 1 Couch on Insurance, Sec. 292, p. 756.

" * * * others having the custody of and being responsible for property, may insure in their own names, and may recover from the insurer, not only a sum equal to their own interest in the property by reason of any lien for advances or charges, but the full amount named in the policy, up to the value of the property." 2 Couch on Insurance, Sec. 419, p. 1204.

" * * * a vendor has an insurable interest in personal property sold, but not fully paid for, * * *." 2 Couch on Insurance, Sec. 438d, p. 1243.

"In considering representations, warranties, and conditions with respect to the interest and title of the insured in or to the property insured, the intent of the parties is the material issue; consequently, if 'interest' only is clearly intended, it will not be construed to mean 'title,' since the parties may contract with reference to the condition of the interest, either legal or equitable, or they may contract with respect to the title itself." 4 Couch on Insurance, Sec. 913, p. 3172.

The foregoing quotations of substantive law are aptly summarized in Section 8070, Revised Codes of Montana, 1935, Vol. 3, p. 916, quoted above.

 It is conceded that the policy was to include Rice Oil Company and Fulton Oil Company. It is thus admitted that the wording of the policy by the action and

through the suggestion of appellants' agent did not express the true intention of the parties. The court found "that Rice Oil Company and Fulton Oil Company took out insurance * * * to protect their interests in the property held and possessed by them under the contract with Marine Corporation, * * *."

The court further found that the agent of appellants advised the agent of appellee that in taking out this insurance it was their intention "to cover the interests of the various W. E. Rice Companies by the proposed insurance, and advised Moon Agency as to what property was to be covered and that Rice Oil Company and Fulton Oil Company had an interest in the property and possession of the property and wanted insurance to protect their interests."

Nor can it be questioned that appellee's agent intended to meet this expressed purpose by adding a rider to the policy issued, which was formulated as he testified to "give our assured very broad coverage, and if anything ever came up on a loss there would be no dispute over it, over such loss, regardless of who owned the property, or whose property it was." These uncontestable facts make a further quotation from Wright v. Fire Ins. Co. of London, 12 Mont. 474, 31 P. 87, 91, 19 L.R.A. 211, very apt. There the Supreme Court of Montana said: "The situation further involves the misleading of the one pretended to be insured into the belief that the property in question was insured, when in fact it was not, and thus not only so contriving as to get pay for the risk without assuming it, but doing the more grievous wrong of leading the party honestly seeking and paying for insurance into suffering the entire loss of the things proposed to be insured in the transaction. We do not conclude that such was the method of transacting business on the part of defendant, nor its intention in the transaction."

The court determined that under the testimony it was required to reform the policy and it did so to the extent of naming Rice Oil Company and Fulton Oil Company, along with W. E. Rice, as the parties insured, but failed to add, "as their interests might appear," which the evidence in the case equally warranted. It is clear that it was the intention of all the parties to the contract of insurance to insure Rice Oil Company and Fulton Oil Company as their interest should appear regardless of who was named as the insured otherwise the

respective amount which each appellant was entitled to receive could not be determined.

Very clearly the findings of facts compel the conclusion that a proper reformation of the policy requires that in addition to including Rice Oil Company and Fulton Oil Company, the words "as their interests might appear" must be added thereto.

Upon the argument of this case counsel for appellee conceded that if it should be determined that the policy be reformed, as here indicated, in that event judgment for appellants as prayed for would be required under the findings. Therefore, the decision of the lower court and its judgment and decree are modified and amended so that the policy in suit be reformed by adding after the named insured the following: "Rice Oil Company and Fulton Oil Company as their interests might appear," and that Rice Oil Company and Fulton Oil Company do have and recover of and from defendant, Atlas Assurance Company, Ltd., the sum of $7,329.63, together with interest thereon at the rate of 6% per annum from August 9, 1933, and for plaintiffs' costs and disbursements herein incurred, and as so amended the judgment and decree of the District Court are affirmed.

WILBUR, Circuit Judge (concurring).

I concur in the conclusion that plaintiffs are entitled to judgment for $7,329.63, together with interest at six per cent from August 9, 1933, for the following reasons:

It is conceded in the pleadings that the policy was intended to cover, and should be reformed to cover, the appellants. Consequently, the policy is to be read as though it were so written.

The Insurance Company relies upon a clause of the policy set out in Judge GARRECHT'S opinion providing that the policy shall be void "if the interest of the insured be other than unconditional and sole ownership".

In my opinion the first paragraph of the rider to the policy which is set out in Judge GARRECHT'S opinion, supersedes the general provisions of the policy with relation to unconditional ownership. The rider shows on its face that it is to be used in reference to property on lands leased for the development of oil. To the extent that the property insured is affixed to the land the lessee would not be the unconditional owner. It is not alleged that

any of the property destroyed by fire, liability for which is contested by the Insurance Company, was affixed to the land, but the description of the destroyed property contained in the complaint would indicate that some of it, if not most of it, was affixed to the land. One item is a building 20 x 22 x 16; another, a pump house 12 x 28; there are 2 3,000-barrel tanks, and 2 1000-barrel tanks which are probably affixed to the land. There was an electric dehydrator with fittings and pipes, gate-valves, etc.; there were 18 250-barrel tanks and 2 500-barrel tanks.

The policy expressly included in its coverage in the rider all buildings, structures, tanks, equipment and contents therein, "all while upon the premises at the location specified * * * pertaining to the operation of the oil and gas well properties and situate on land owned and/or leased and/or occupied by the insured."

The evidence shows that the oil companies named in the policy as reformed had acquired the oil leases and had assigned their leases to the Marine Oil Company. Neither the Marine Oil Company nor the oil companies mentioned in the policy as amended owned unconditional title to the land or the fixtures thereon; notwithstanding this fact the policy expressly includes such property by the terms of the rider. Consequently, it could not have been intended that the fact that the insured's interest was that of a lessee rather than an unconditional owner should invalidate the policy. This reasoning applies only to the fixtures.

As to the personal property, if any, destroyed it might be said that the policy required unconditional ownership notwithstanding the fact that the rider would take precedence over the unconditional ownership clause which is a part of the standard form of policy where the two clauses are in conflict, but the fact that no distinction was made in the policy between fixtures, as to which it is obvious the insured did not have unconditional ownership, and the other items wherein they might have such ownership, under such circumstances, bearing in mind that ambiguities are to be construed in favor of the insured, I am of the opinion that the condition as to ownership was waived in its entirety in so far as the property described in the policy was concerned.

I cannot agree that the second paragraph of the rider relating to property for which the insured is legally liable is applicable to the situation disclosed by the evidence and set out in Judge GARRECHT'S opinion.