**JACK and JOAN HOLLAND, Plaintiffs**

**v.**

**HALECK'S ISLAND MOTORS, Defendant**

High Court of American Samoa
Trial Division

CA No. 95-89

January 22, 1991

Before KRUSE, Chief Justice, VAIVAO, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiffs, Robert A. Dennison III
For Defendant, John L. Ward II

Plaintiffs, Jack and Joan Holland, owned a certain motor vehicle which they had left with the defendant Haleck's Island Motors (hereafter "Haleck's") for servicing. Haleck's is an American Samoan corporation registered under the name Island Nissan Subaru, Inc., and it carrys on business in Pavaia'i as a dealer and repairer of automobiles. While the subject vehicle remained in Haleck's possession, it was destroyed by a fire which completely consumed the building in which Haleck's was located.

Plaintiffs seek recovery from Haleck's and its insurer, Royal

Insurance Company,[1] for the value of the lost vehicle. They assert a bailment contract and further submit that Haleck's failure to return the bailed property, after demand had been made for its return, constituted a *prima facie* case of actionable breach of bailment. "Alternatively," plaintiffs allege "that [Haleck] was negligent in the performance of it [sic] obligations to Plaintiff under the [bailment] contract." (Amended complaint, paragraph 4).

There is no dispute that the facts here depict a bailment for mutual purposes between plaintiffs and Haleck's. At the same time, the parties also acknowledge the well-settled rule of law that an ordinary bailee is not an insurer of bailed property absent statute or express agreement. A bailee, however, is liable only for loss resulting from his negligence in caring for and protecting the property bailed.[2] *Garcia v. Galea'i*, 15 A.S.R.2d 14, 17 (1990). In the case of a mutual bailment, it has been said that a bailee, in relation to the property bailed, is held to a duty of "ordinary care," that is, "that degree of care, attention, or exertion which, under the actual circumstances, a man of reasonable prudence and discretion would use in reference to the particular thing if it was his own property, and failure to do so would render him liable." *Rice Oil Co. v. Atlas Assurance Co.*, 102 F.2d 561, 574 (9th Cir. 1939). It is that measure of care which "ordinarily prudent men, as a class, would exercise in caring for their own property under the like circumstances." *Garcia v. Galea'i, supra* at 17. *See also* 8 C.J.S., Bailments § 27; 8 Am. Jur.2d, Bailments § 221-222.

Whether the action here is viewed as one based on negligence or on breach of contract, the courts have held in many instances that a *prima facie* case of negligence or breach of contract will have been established against the bailee where a bailor has shown: 1) a bailment, 2) delivery of property to the bailee, and 3) failure of the bailee to redeliver the property undamaged. *See* Am. Jur.2d, Bailments § 329, at 1066; 8 C.J.S. Bailments, § 50(2), at 518; Annotation, 65 A.L.R.2d

---

[1] The insurance company was joined under A.S.C.A. § 29.1537 which permits plaintiff a right of direct action. *See Holland v. Haleck's Island Motors*, 15 A.S.R.2d 44 (1990).

[2] Unless he has either agreed to assume a greater liability or he is one of those special bailees, such as common carriers and innkeepers, upon whom the law has imposed a strict rule of liability on grounds of public policy. 8 Am Jur 2d, Bailments § 215, at 941.

4

1228, 1233. The underlying policy reasons here have been explained as follows:

> [T]he law takes into account the relative opportunity of the parties to know the fact in issue and to account for the loss which it is alleged is due to the breach. Since the bailee in general is in better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him.

*Commercial Corporation v. N.Y. Barge Corporation*, 314 U.S. 104, 111 (1941) (citations omitted). It therefore follows that the bailee, in order to avoid liability under either theory, must provide a lawful excuse for non-return of the property or otherwise explain that damage to the property was not owing to his want of due care. Otherwise, as the Supreme Court further noted,

> the trier of fact [is free] to draw an inference unfavorable to [the bailee] upon the bailor's establishing the unexplained failure to deliver the goods safely. Whether we label this permissible inference with the equivocal term "presumption" or consider merely that it is a rational inference from the facts proven, it does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence.

*Id.* (citations omitted). *See also* Am. Jur.2d, Bailments §§ 323, 326, 327.

In the matter before us, there being no suggestion in the evidence of misdelivery or conversion, the *prima facie* case to be met by Haleck's, whether under plaintiff's contract theory or negligence theory, is culpable negligence or absence of ordinary care.[3] Having said as

---

[3] Some cases have also suggested a distinction between pleading under a contract theory and pleading under a negligence theory. That distinction is said to be the difference between proving an affirmative

much, this is not to say, however, that the law thereby requires "that the bailee must affirmatively prove a negative to the effect that he was not guilty of negligence." *McKeever v. Kramer*, 218 S.W. 403, 405 (Mo. App. 1920). "Under such circumstances it is the duty of the defendant to account for the loss of the goods, and to show that the loss was occasioned by some act such as theft, fire, etc., in which event *prima facie* this is an exoneration, and it is not his duty to further prove affirmatively that he is guilty of no negligence." *Id.* Thus, a bailee should either go forward with exculpatory evidence accounting for the property, or with evidence which exonerates him of fault. *See also* Am. Jur.2d, Bailments § 333 at 1074. This "does not cause the burden of proof to shift, and if the bailee does go forward to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start." *Commercial Corporation v. N.Y. Barge Corporation, supra* 314 U.S. at 111.

In the instant matter, the defense argues that no inference of undue care on the part of Haleck's may be drawn from the facts surrounding the occurrence of the fire.[4] The evidence shows that the fire broke out in the early hours of the morning, at a time when the premises are normally left unoccupied. Mr Dave Haleck, Vice President for Haleck's, testified that he was alerted to the fire by a telephone operator who had called him at about one o'clock in the morning to advise that the supermarket building was on fire. He stated that when he arrived at the scene, there were fire trucks already there engaging the

---

defense for failure to redeliver the bailed article and the rebuttal of an evidentiary presumption of negligence. In a contract case, the burden is said to remain with the bailee to prove that the bailed article was destroyed without his fault; however, where negligence is alleged, the burden is on the bailor. *See* Am. Jur.2d, Bailments § 327; Annotation, 65 A.L.R.2d, 1228, 1242; 44 A.L.R.3d 171, 201.

The immediate criticism with this rule, of course, is that the ultimate burden of persuasion is made dependent on the niceties of pleading.

[4] Although a great number of cases have held that proof of destruction by fire is sufficient to rebut a presumption of undue care, the courts have in some other cases taken the view that proof of fire is not in itself sufficient rebuttal and that the bailee had to go forward with further evidence to overcome the presumption of negligence raised by non-return. *See* Annotation, 44 A.L.R.3d 171, 184.

6

fire. By that time, the fire, according to Mr. Haleck, was very intense as he could feel the heat from across the road where he had stopped his car, and he noted that the fire was progressing from the building's western end, where Haleck's showroom was located, towards its eastern end. He also went to the back to check on the other side of the buildings, where he found one of the resident employees hosing down the adjoining supermarket building.

Notwithstanding the efforts of the Fire Division, the consequence of the fire was the total destruction of the entire building.[5] Significantly, those efforts were undoubtedly hampered because the fire hydrants located directly opposite the burning structure were hopelessly lacking in water. This calamitous state of affairs, in turn, necessitated a time loss with the pick-up of water from other and distant locations.

An adjuster, a Mr. Stanley Chung of Honolulu, employed by the insurance company to investigate the fire, had earlier deposed that he ruled out electrical fault as being the cause of the fire. As he had found that all the circuit breakers for the building were still in the "on" position, this led him to believe that none of the wiring in the building had short-circuited. He further concluded after sifting through the various levels of burn debris that the fire had originated on the second floor of the building in a room above Haleck's premises. Mr. Chung, however, could find no evidence pinpointing the actual cause of the fire.

At the time of the fire, plaintiffs' vehicle was stored at the rear of the building where the automobile repair shop was located. The automobile repair shop was actually a lean-to against the main building; however, it was secured at nights by fencing and adjacent buildings. As might be expected of any similar business, Haleck's kept its premises reasonably secured and locked at nights, and the area was also well lighted both to the rear and front of the building. Although Haleck's did not employ a night watchman, Mr. Otto Haleck did have certain employees quartered in two residential homes within his property and adjacent to his various business enterprises.

In our view, the evidence presented in this matter was not inconsistent with due care on the part of Haleck's. At all relevant times, plaintiffs' vehicle was secured in a locked, fenced, and well-lighted area.

---

[5] The building belonged to Mr. Otto Haleck and housed other business tenants as well.

Unfortunately, a fire of unknown causes broke out late at night and totally destroyed Haleck's premises and contents. The efforts of fire fighters were significantly curtailed because fire hydrants in the area lacked water. We conclude that these are circumstances more consistent with exoneration rather than fault.

Plaintiffs also submit that the absence of such things such as a night watchman, fire detection devices and alarms, sprinklers and more extensive fire fighting equipment constituted negligence on the part of Haleck's. We disagree. Whether the presence of such things could have mitigated or prevented plaintiffs' loss is at best a matter of speculation. The fire was intense and spread very rapidly, and there was realistically very little to be done in way of containing it, given the hydrants' lack of water. Secondly, negligence presumes a duty of care, and, as we noted at the outset, the duty of care which the law imposes upon a bailee (in the context of a bailment for mutual purposes) is that degree of care which ordinarily prudent men would exercise in caring for their own property. We hold, bearing in mind that a bailee for mutual purposes is not an insurer, that Haleck's failure to have the sort of fire detection devices and alarms advocated by plaintiffs did not amount to negligence on the part of Haleck's. To find otherwise would be tantamount to imposing a very high degree of care, approaching that of requiring a bailee for mutual purposes to employ every precaution available for the protection of bailed property.

Finally, plaintiffs also contend that Haleck's had a duty to insure for their benefit. The argument here curiously appears to be based on the fact that Mr. Dave Haleck had thought that such insurance coverage had been procured. As it turns out, this belief was not only mistaken but entirely without foundation. Mr. Haleck also acknowledged that he had nothing to do with the negotiation and procurement of insurance, and that the matter of insurances for the various Haleck-affiliated businesses was actually handled by another corporate official, the controller.[6] In any event, the submission is at odds with the law. Unless plaintiffs can point to a governing statute, to an agreement to insure, to some custom or usage of trade, or to a course of dealings between the parties which

_____

[6] We also noted the following disclaimer on Haleck's standard "Repair Order" form which seems to embody a policy contradicting Mr. Dave Haleck's belief: "It is understood that the company assumes no responsibility for loss or damage by theft or fire to the vehicle placed with them for storage, sale, repair or road testing."

manifests an understanding that insurance would be provided, Haleck's, as a bailee for mutual purposes, was under no legal obligation to insure. Annotation, 44 A.L.R.3d 513.

For reasons given, judgment will be in favor of the defendants.

It is so Ordered.